**Nos. 25-3030, 25-3034**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

——————————

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO,
*et al.*,
*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,
*Defendants-Appellants.*

(full caption on inside cover)

——————————

On Appeal from the United States District Court
for the Northern District of California

——————————

In re DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,
*Petitioner.*

(full caption on inside cover)

——————————

On Petition for Writ of Mandamus to the United States District Court
for the Northern District of California

——————————

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL/PETITION FOR WRIT OF MANDAMUS**
——————————

YAAKOV M. ROTH
   *Acting Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney General*

PATRICK D. ROBBINS
   *Acting United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
MAXWELL A. BALDI
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7513*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*

No. 25-3030

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 1000; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA, CALIFORNIA; CITY OF CHICAGO, ILLINOIS; MARTIN LUTHER KING, JR. COUNTY, WASHINGTON; HARRIS COUNTY, TEXAS; CITY OF BALTIMORE, MARYLAND; and CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, *in his official capacity as Director of U.S. Office of Management and Budget*; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, *in his official capacity as Acting Director of the U.S. Office of Personnel Management*; DEPARTMENT OF GOVERNMENT EFFICIENCY; ELON MUSK, *in his official capacity as the actual head of the Department of Government Efficiency*; AMY GLEASON, *in her official capacity as the titular Acting Administrator of the Department of Government Efficiency*; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of the U.S. Department of Commerce*; UNITED STATES DEPARTMENT OF DEFENSE; PETE HEGSETH, *in his official capacity as Secretary of the U.S. Department of Defense*; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, *in his official capacity as Secretary of the U.S. Department of Energy*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR., *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing and Urban Development*; UNITED STATES DEPARTMENT OF JUSTICE; PAM BONDI, *in her official capacity as Attorney General of the U.S. Department of Justice*; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*; UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of the U.S. Department of Labor*; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*; UNITED STATES DEPARTMENT OF TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of U.S. Department of Treasury*; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY*, in his official capacity as Secretary for the U.S. Department of Transportation*; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, *in his official capacity as Secretary of Veterans Affairs*; AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI, *in her official capacity as Interim Agency Head of AmeriCorps*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, *in his official capacity as Administrator of U.S. Environmental Protection Agency*; UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, *in his official capacity as Acting Administrator for U.S. General Services Administration*; NATIONAL LABOR RELATIONS BOARD; MARVIN KAPLAN, *in his official capacity as Chairman of the National Labor Relations Board*; WILLIAM COWEN, *in his official capacity as the Acting General Counsel of the National Labor Relations Board*; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, *in his official capacity as Acting Director of the National Science Foundation*; UNITED STATES SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, *in her official capacity as Administrator of the U.S. Small Business Administration*; UNITED STATES SOCIAL SECURITY ADMINISTRATION; and LELAND DUDEK, *in his official capacity as Acting Commissioner of the U.S. Social Security Administration*,

*Defendants-Appellants.*

## No. 25-3034

In re DONALD J. TRUMP, *in his official capacity as President of the United States, et al.*,

DONALD J. TRUMP, *in his official capacity as President of the United States*, UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, *in his official capacity as Director of U.S. Office of Management and Budget*; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, *in his official capacity as Acting Director of the U.S. Office of Personnel Management*; DEPARTMENT OF GOVERNMENT EFFICIENCY; ELON MUSK, *in his official capacity*; AMY GLEASON, *in her official capacity as the Acting Administrator of the Department of Government Efficiency*; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of the U.S. Department of Commerce*; UNITED STATES DEPARTMENT OF DEFENSE; PETE HEGSETH, *in his official capacity as Secretary of the U.S. Department of Defense*; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, *in his official capacity as Secretary of the U.S. Department of Energy*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR., *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing and Urban Development*; UNITED STATES DEPARTMENT OF JUSTICE; PAM BONDI, *in her official capacity as Attorney General of the U.S. Department of Justice*; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*; UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of the U.S. Department of Labor*; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*; UNITED STATES DEPARTMENT OF TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of U.S. Department of Treasury*; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, *in his official capacity as Secretary for the U.S. Department of Transportation*; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, *in his official capacity as Secretary of Veterans Affairs*; AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI, *in her official capacity as Interim Agency Head of AmeriCorps*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, *in his official capacity as Administrator of U.S. Environmental Protection Agency*; UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, *in his official capacity as Acting Administrator for U.S. General Services Administration*; NATIONAL LABOR RELATIONS BOARD; MARVIN KAPLAN, *in his official capacity as Chairman of the National Labor Relations Board*; WILLIAM COWEN, *in his official capacity as the Acting General Counsel of the National Labor Relations Board*; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, *in his official capacity as Acting Director of the National Science Foundation*; UNITED STATES SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, *in her official capacity as Administrator of the U.S. Small Business Administration*; UNITED STATES SOCIAL SECURITY ADMINISTRATION; and LELAND DUDEK, *in his official capacity as Acting Commissioner of the U.S. Social Security Administration*,

*Petitioners-Defendants*,

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

*Respondent*,

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 1000; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA, CALIFORNIA; CITY OF CHICAGO, ILLINOIS; MARTIN LUTHER KING, JR. COUNTY, WASHINGTON; HARRIS COUNTY, TEXAS; CITY OF BALTIMORE, MARYLAND; and CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA,

*Real Parties in Interest-Plaintiffs.*

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

STATEMENT ...................................................................................................... 2

    A.    Statutory and Regulatory Background ........................................... 2

    B.    Factual Background .......................................................................... 4

ARGUMENT ...................................................................................................... 8

I.    This Court should stay the grant of injunctive relief .............................. 8

    A.    This Court has appellate jurisdiction ............................................. 8

    B.    The government is likely to succeed on the merits. .................... 10

        1.    Plaintiffs' claims are not justiciable in district court. ..................... 10

        2.    Plaintiffs' challenges to the Executive Order are meritless. ......... 14

        3.    Plaintiffs' challenges to the Memorandum are meritless. ............. 17

    C.    The other stay factors strongly favor the government. ............................ 19

II.    This Court should stay the district court's discovery order ............................... 21

    A.    The district court failed to justify its order ................................. 21

    B.    Public disclosure of sensitive documents would irreparably harm the government. ................................................................................ 23

CONCLUSION .................................................................................................. 24

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court entered a sweeping order preventing 20 federal agencies from carrying out an Executive Order directing them to undertake preparations for reductions in force (RIFs) consistent with applicable law.  The court further ordered the government—in less than two business days—to publicly produce highly sensitive records that document the agencies' deliberations about how they might implement the President's directive, without conducting *any* of the analysis required to determine whether the deliberative-process privilege has been overcome.  The parties have agreed to pause that deadline, but the district court has not yet acted, so, as of now, the government must publicly produce these records by May 13.  As for the injunction, the government sought a stay from the district court, which refused to consider the motion.

This Court should stay the order pending appeal.  At the threshold, plaintiffs' claims are not justiciable in district court.  Congress has channeled federal-employment disputes of this type to a comprehensive review scheme, and, in any event, plaintiffs challenge an Executive Order and a related memorandum directing agencies to take certain preparatory steps, not any reviewable final agency action.  On the merits, the injunction rests on a fundamentally flawed understanding of the separation of powers.  The court concluded that the President must have express congressional authorization to direct agencies to carry out RIFs.  But agencies have express statutory authority to conduct RIFs, and the President may tell agencies to use

their own statutory authorities to accomplish policy goals. The court questioned whether agencies may conduct RIFs at "large scale," but that limitation appears nowhere in the statutory text, and plaintiffs' speculation that agencies may violate their organic statutes in reducing their workforces provides no basis for the injunction.

The harms to the Executive Branch are apparent from the court's order, which halts nearly every executive department from taking steps to implement the President's policy priorities. To correct these errors and prevent further irreparable harm, this Court should grant a stay. Given the imminent compliance deadlines, the government respectfully requests that this Court act on this motion by Thursday, May 15.

## STATEMENT

### A.    Statutory and Regulatory Background

**1**. The Office of Management and Budget (OMB) is a component of the Executive Office of the President (EOP) that assists the President in preparing the budget and overseeing agencies. *See* 31 U.S.C. §§ 501-503. The Office of Personnel Management (OPM) is an independent establishment in the Executive Branch that assists the President in overseeing the federal workforce. *See* 5 U.S.C. §§ 1101-1104. The U.S. DOGE Service (USDS) is an entity in EOP created to help advise and consult on the President's agenda of "modernizing federal technology and software to

2

maximize governmental efficiency and productivity."  Executive Order 14158, 90 Fed. Reg. 8441, 8441 (Jan. 29, 2025).

**2**.  Federal law expressly recognizes that the government may conduct RIFs, an "administrative procedure by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions."  *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002); *see* 5 U.S.C. § 3502.  OPM has promulgated regulations specifying requirements for RIFs, under which "OPM may examine an agency's preparations for [RIFs] at any stage."  5 C.F.R. § 351.205.

Agencies' authority to conduct RIFs predates the modern civil service.  *See* Act of Aug. 15, 1876, 19 Stat. 143, 169; *see generally Hilton v. Sullivan*, 334 U.S. 323, 336-39 (1948).  Courts have recognized the government's broad discretion to decide which employees to retain or separate.  *See, e.g., Keim v. United States*, 177 U.S. 290, 295 (1900).  And the President has often set priorities for federal agencies resulting in RIFs.  *See, e.g.*, Executive Order 12839, 58 Fed. Reg. 8515, 8515 (Feb. 10, 1993) (directing 4% reduction in civilian workforce to be implemented through "detailed instructions" from OMB).

**3**.  The Civil Service Reform Act (CSRA) "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees."  *United States v. Fausto*, 484 U.S. 439, 455 (1988).  Under the CSRA, most civilian employees can appeal a major adverse action to the Merit Systems Protection Board (MSPB). 5 U.S.C. §§ 7512, 7513(d), 7701.  Employees subject to RIFs may also pursue a

challenge before the MSPB. *See* 5 C.F.R. § 351.901. The MSPB may order relief, including reinstatement with backpay. 5 U.S.C. §§ 1204(a)(2), 7701(g). An employee aggrieved by a final decision of the MSPB may obtain judicial review in the Federal Circuit. *Id.* § 7703.

Additionally, the Federal Service Labor–Management Relations Statute (FSLMRS) governs labor relations between the Executive Branch and its employees. *See* 5 U.S.C. §§ 7101-7135; *AFGE v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019). The Federal Labor Relations Authority (FLRA) is charged with adjudicating federal labor disputes. 5 U.S.C. § 7105(a)(2). Review of FLRA decisions is available in the courts of appeals. *Id.* § 7123(a).

### B.   Factual Background

**1. a.**  In February, the President issued an executive order directing "Agency Heads [to] promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law." Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025), Add.118, § 3(c). The order sets priorities for how agencies carry out RIFs and categorically exempts from RIFs "functions related to public safety, immigration enforcement, or law enforcement." *Id.*

The Executive Order further provides that, by March 13, 2025, "Agency Heads shall submit to" OMB "a report that identifies any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities," and which "discuss[es] whether the agency or any of its subcomponents should be eliminated or

4

consolidated." Add.118,§ 3(e).  The Executive Order again emphasizes that agency heads need not consider reductions for "any position they deem necessary to meet national security, homeland security, or public safety responsibilities," Add.118, § 4(b), and that the order "shall be implemented consistent with applicable law and subject to the availability of appropriations." Add.119, § 5(b).

**b.**  Two weeks later, OPM and OMB jointly issued a guidance Memorandum to agencies.  Add.121-27.  The Memorandum explained that agencies should submit Agency RIF and Reorganization Plans that "seek to achieve" (1) "[b]etter service for the American people"; (2) "[i]ncreased productivity; (3) "[a] significant reduction in the number of full-time … positions by eliminating positions that are not required"; (4) "[a] reduced real property footprint; and (5) "[r]educed budget topline."  Add.121-22.  OPM and OMB cautioned agencies, in formulating the Plans, to review "their statutory authority and ensure that their plans and actions are consistent with such authority."  Add.122.

The Memorandum explains that agencies should submit Plans in two phases. The initial Plans were to be submitted by March 13, 2025, and "focus[ed] on initial agency cuts and reductions."  Add.123.  The second-phase Plans, to be submitted by April 14, 2025, "outline[d] a positive vision for more productive, efficient agency operations going forward" to be implemented by the end of the fiscal year.  Add.124. The Plans were to be submitted to OMB and OPM "for review and approval." Add.123-24.

The Plans do not themselves implement any RIFs. Rather, the Plans describe RIFs that an agency intends to undertake. Add.124-25. Agencies must then follow an established process to actually reduce their workforce, including providing 30- or 60-days' notice, Add.127. *See* 5 U.S.C. § 3502; 5 C.F.R. Part 351 Subpart H.

2. Plaintiffs are unions, advocacy organizations, and local governments. Add.13-20. Eleven weeks after the President issued the Executive Order, they sued the President, OPM, OMB, USDS, and twenty-one federal agencies—including every Cabinet-level agency except the Department of Education. Add.20-25. Plaintiffs alleged the President transgressed the separation of powers by directing agencies to prepare for RIFs, *see* Add.98-100; that OMB and OPM usurped other agencies' statutory authority by providing related guidance as the President directed, *see* Add.100-08; and that notice-and-comment rulemaking was required for that interagency guidance, *see* Add.105-06.

Plaintiffs moved for a "temporary restraining order" supported by a 50-page brief, Add.148-98, and more than 1,300 pages of declarations, *see* Dkt.42, 70-1, 70-2, which the government opposed.

3. Following a hearing, the district court granted preliminary relief. The court found that at least some plaintiffs have standing, Add.384, and that it could exercise general federal-question jurisdiction notwithstanding the CSRA and the FSLMRS, Add.391. The court then concluded that plaintiffs are likely to succeed on the merits. Add.398, 400, 403. Invoking separation-of-powers principles, the court held that

6

absent express congressional authorization, the President cannot direct agencies to engage in "large-scale RIFs," Add.397, and that OMB, OPM, and USDS are unlawfully usurping agencies' authority to make RIF determinations,Add.399-403.

While the court captioned its order as a temporary restraining order, it acknowledged that it conducted "substantially identical" analysis as it would for "evaluating injunctive relief." Add.376. The court "enjoined" twenty agencies, as well as "any other individuals acting under their authority or the authority of the President" from "taking any actions to implement or enforce sections 3(c) and 3(e) of Executive Order" or the Memorandum. Add.406. Among other restrictions, the court forbade agencies from approving Plans, issuing or executing RIF notices, or placing any employees on administrative leave. *Id.*

Additionally, the district court ordered the government to produce:

(1) the versions of all defendant agency [Plans] submitted to OMB and OPM, (2) the versions of all defendant agency [Plans] approved by OMB and OPM, (3) any agency applications for waivers of statutorily-mandated RIF notice periods, and (4) any responses by OMB or OPM to such waiver requests

Add.406. Notably, the court required disclosure of multiple versions of the Plans, *id.*, though plaintiffs only requested "current versions," Add.130. And it required disclosure of "agency applications for waivers," Add.406, even though plaintiffs asked only for disclosure of the "waivers" (and only for the first time at the hearing), Add.355. Nevertheless, the court ordered the government to produce all these documents by May 13. Add.406. The district court explained only that "good cause

[for disclosure] ha[d] been shown pursuant to Federal Rule of Civil Procedure 26(d)." *Id.*

**4.** The government asked the court to stay its order pending appeal, Add.361-62, but the court expressly refused to "consider" that motion, stating only that a stay would "render" its preliminary relief "pointless," Add.408.

The government also moved for reconsideration and a protective order to prevent disclosure of the Plans, Add.409, which remains pending. Plaintiffs have agreed not to oppose an order pausing the government's production obligation until the court rules on the pending motion. Add.424.

## ARGUMENT

The government is entitled to a stay because it is likely to succeed on the merits, it will suffer irreparable harm absent a stay, and the balance of the equities and the public interest favor a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

## I.    This Court should stay the grant of injunctive relief.

### A.    This Court has appellate jurisdiction.

At the outset, this Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1). While temporary restraining orders typically are not appealable, "the label attached to an order is not dispositive." *Abbott v. Perez*, 585 U.S. 579, 594 (2018). "[W]here an order has the 'practical effect' of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction." *Id.*; *see also, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 86-87 (1974) (district court cannot "shield its orders from

8

appellate review merely by designating them as temporary restraining orders"). The court's order is an appealable injunction because it has the practical effect of enjoining the implementation of the Executive Order and Memorandum, and it threatens "serious and perhaps irreparable harm if not immediately reviewed." *Abbott*, 585 U.S. at 594.

This Court "treat[s] a TRO as a preliminary injunction where an adversary hearing has been held, and the court's basis for issuing the order is strongly challenged." *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018) (cleaned up); *accord Department of Education v. California*, 145 S. Ct. 966, 968 (2025). Here, plaintiffs presented nearly 1,300 pages of evidence in support of their motion, amici on both sides filed briefs, and the government comprehensively opposed preliminary relief. Indeed, given these circumstances, the government expressly requested that the court treat plaintiffs' motion as one for a preliminary injunction. *E.g.*, Add.359. The court rejected that request, *id.*, and then issued a 42-page opinion thoroughly addressing the merits styled as a "temporary restraining order," Add.367-408. Nothing could be further from the purpose of a TRO: preserving the status quo only "until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Pan Am. World Airways v. Flight Engineers' Int'l Ass'n*, 306 F.2d 840, 842-43 (2d Cir. 1962); *see also Houghton v. Meyer*, 208 U.S. 149, 156 (1908). This order is a preliminary injunction in all but name.

In the alternative, this Court may exercise mandamus jurisdiction to review the order. 28 U.S.C. § 1651; *see* Pet. 14-15.

**B.    The government is likely to succeed on the merits.**

### 1.    Plaintiffs' claims are not justiciable in district court.

**a.**   First, the district court lacks subject-matter jurisdiction to adjudicate plaintiffs' challenges to agencies' employment decisions. Instead, Congress has "established a comprehensive system" as the "exclusive means" for reviewing such matters. *Elgin v. Department of Treasury*, 567 U.S. 1, 5, 8 (2012) (quotation marks omitted). The CSRA, together with the FSLMRS, "creates an integrated scheme of administrative and judicial review, wherein the Congress intentionally provided—and intentionally chose not to provide—particular forums and procedures for particular kinds of claims." *AFGE. v. Secretary of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (cleaned up). Congress allowed certain individual federal employees to challenge agency personnel decisions "by litigating their claims through the statutory scheme in the context of [a] concrete" dispute, albeit limited to the claims and remedies provided by Congress. *See AFGE. v. Trump*, 929 F.3d at 757.

The court acknowledged this comprehensive scheme, Add.384-85, but erroneously concluded that plaintiffs' claims fall outside it. Plaintiffs seek to preemptively challenge agencies' reduction-in-force decisions. Add.57-72. But federal employees who believe a reduction in force has not been carried out pursuant to statute or regulation may seek redress only through the MSPB. *See* 5 U.S.C. § 7701(a);

10

5 C.F.R. § 351.901; *see also Alder v. TVA*, 43 F. App'x 952, 956 (6th Cir. 2002) (a "reduction-in-force decision" is "a fundamental employment claim subject to MSPB review"). Plaintiffs may not seek to evade this scheme by bringing claims as unions asserting harms to their individual members or harms to the unions from a loss of membership dues. Were that permitted, any unionized employee easily "could circumvent the CSRA's strictures." *See Air Force*, 716 F.3d at 639. Moreover, the FSLMRS, "governs federal labor-management relations" and "establishes a comprehensive scheme to deal with labor relations in federal employment," which channels adjudication to the FLRA followed by direct review in the courts of appeals. *Id.* at 636. Under the FSLMRS, unions may file a grievance under preexisting collective bargaining agreements "concerning any matter relating to the employment of any employee," "the effect or interpretation, or a claim of breach, of a collective bargaining agreement," or "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. §§ 7103(a)(9), 7121(a)(1).

These comprehensive provisions foreclose the union plaintiffs' attempt to raise their labor dispute in district court. And for the same reason, the claims cannot be brought by the non-union plaintiffs who assert downstream harms from agencies' employment decisions. To the extent the CSRA says "nothing" about non-profits, non-federal-employee unions, or "local governments," Add.391, that silence only underscores that those plaintiffs cannot bring these claims *at all* not that they may file

11

suit outside the CSRA's strictures, *see Fausto*, 484 U.S. at 455 (Congress's "deliberate exclusion of employees in respondent's service category" from CSRA's scheme "prevents respondent from seeking review" through other channels).

That plaintiffs seek to challenge "large scale" RIFs, Add.386, does not alter this analysis. Plaintiffs cannot evade the CSRA by agglomerating many individual employment actions into one shotgun complaint. Similarly, that plaintiffs challenge an Executive Order and seek to raise constitutional claims does not allow them to escape the CSRA's limits. *See Elgin*, 567 U.S. at 17; *AFGE v. Trump*, 929 F.3d at 759. Nor does the district court's apparent belief that it would be a waste of time for employees to bring claims administratively and then raise claims in federal court, Add.390, provide any basis to second-guess Congress's considered judgment. *See Elgin*, 567 U.S. at 13, 17.

**b.** Further, plaintiffs do not identify final agency action reviewable under the APA. The President and USDS are not agencies at all. *See Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992) (President); *Kissinger v. Reporters Committee*, 445 U.S. 136, 156 (1980) (advisory units within EOP). And though OMB and OPM are agencies, the Memorandum is not a final action.

To be final, an agency action (1) "must mark the 'consummation' of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature" and (2) determine "rights or obligations" or have "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The APA expressly

excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704. The Memorandum satisfies neither criterion. Plaintiffs failed to explain how the Memorandum consummates any agency's decisionmaking process in such a way that legal consequences flow from it. The Memorandum is an internal document that simply begins an iterative process between agencies and OPM and OMB. It contemplates the creation of planning documents, which themselves may lead to final agency actions, but the Memorandum itself is far afield from any action that has legal consequences and directly affects plaintiffs. The APA does not permit this type of "wholesale" attack on an agency program; rather, plaintiffs must point to "some particular 'agency action' that causes [them] harm," and they have failed to do so. *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

 **c.** Nor can plaintiffs proceed on an ultra vires claim outside of the APA. Ultra vires claims require a showing that government officials act "without any authority whatever." *Kalispel Tribe of Indians v. U.S. Dep't of the Interior*, 999 F.3d 683, 691 (9th Cir. 2021). But both the Executive Order and the Memorandum expressly require agencies to act in accordance with statutory authority and relevant appropriations. Add.119, § 5(b); 122.

 *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1239-40 (9th Cir. 2018), does not establish otherwise. Although the Court in that case declined to give effect to an executive order's savings clause, that holding was based on the Court's conclusion that the order had *no* legitimate applications, and so giving effect to the

13

savings clause would effectively negate the order. *Id.* That is plainly not the case here, *see infra* pp. 14-17, and plaintiffs' ultra vires challenge therefore fails. *See Building & Const. Trades Dep'tv. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002).

> **2.** **Plaintiffs' challenges to the Executive Order are meritless.**

**a.** The district court erred in concluding that the President acted ultra vires in directing agencies to take steps to reduce the size of their workforce. Agencies have express statutory authority to conduct RIFs, 5 U.S.C. § 3502, as the district court recognized, Add.397. And as the head of the Executive Branch, the President may undoubtedly tell agencies to examine their statutory authorities and take steps to implement his policy priorities. Indeed, the President's "'ongoing supervision and control' of executive officials legitimizes the power that they exert in his or her name." *Duenas v. Garland*, 78 F.4th 1069, 1072 (9th Cir. 2023) (quoting *Selia Law LLC v. CFPB*, 591 U.S. 197, 224 (2020)). The President did not contravene the separation of powers in directing agencies to carry out RIFs consistent with applicable law.

The district court's contrary conclusion rests on several mistaken premises. The court reasoned that the President must have express statutory authority from Congress to direct agencies to undertake RIFs at a "larg[e] scale." Add.397. But, federal law expressly authorizes agencies to undertake RIFs, and nothing in those provisions purports to impose a numerical cap—let alone an amorphous "large scale" limitation. *See* 5 U.S.C. § 3502. To the contrary, Congress contemplated that agencies

may undertake RIFs large enough to constitute "mass layoff[s]" necessitating certain emergency steps under the Workforce Investment Act of 1998. *See id.* § 3502(d)(3).

For similar reasons, the court erred in concluding that in directing agencies to undertake RIFs consistent with federal law, Add.119, § 5(b), the Executive Order somehow directs agencies to undertake "reorganization[s]" of agency structures that are contrary to law. Add.397-98. The Executive Order does not direct any particular reorganization of any agency but rather instructs agencies to examine their structures, undertake RIFs, and "prioritiz[e]" offices "that perform functions not mandated by statute or other law," and that do not perform essential functions relating to "public safety, immigration enforcement, or law enforcement." Add.116, §§ 3(c), 4(b) The President did not exceed any constitutional or statutory limitation in doing so. "Administrative agencies," of course, "are creatures of statute." *NFIB v. OSHA*, 595 U.S. 109, 117 (2022). But absent congressional specification, an agency's priorities and structure are details that Congress left to the Executive Branch to implement. Nor is that an unusual arrangement: implementing statutes by filling in such details lies at the core of the executive power. *See Bowsher v. Synar*, 478 U.S. 714, 732-33 (1986).

Reflecting this general principle, Congress has expressly empowered each department head to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business." 5 U.S.C. § 301. This general housekeeping authority allows agencies to structure themselves as

they see fit and to employ such staff as they require, subject to other statutory constraints. Congress has also expressly required that, "[u]nder regulations prescribed and administered by the President, each agency shall review systematically the operations of each of its activities, functions, or organization units, on a continuing basis" with an eye towards "efficiency and economy." 5 U.S.C. § 305(b), (c)(1).

Of course, if an agency were to undertake specific actions in implementing a RIF that contravened a statutory command, a proper plaintiff could challenge that action in the appropriate forum. But plaintiffs' broad programmatic challenge does not identify any such action here. Rather, plaintiffs allege, for example, that some agencies will consolidate regional offices. *See, e.g.*, Dkt. 37-21 at 20. Congress, however, generally does not create field offices, so the Executive Branch does not aggrandize its power when it closes field offices without seeking an Act of Congress. Nor have plaintiffs identified any statute providing specific instructions as to whether agency IT staff should be dispersed among offices or instead centralized. *Cf. id.* (HHS "Human Resources, Information Technology, Procurement, External Affairs, and Policy will be centralized"). Plaintiffs' speculation that agencies will violate their organic statutes cannot support the court's across-the-board injunction.

The court's reliance on prior reorganization statutes likewise provides no support for its order. Although congressional action may be necessary when a particular reorganization will require statutory changes, that possibility does not diminish agencies' general authority to structure their offices and workforces in the

16

absence of statutory specifications or suggest that affirmative congressional approval is required for an agency to conduct a particular RIF. Indeed, while the district court made much of the President's contemplation of legislation to reorganize agencies in 2017, it ignores that the relevant order sought recommendations on "any legislation *or administrative measures* necessary to achieve the proposed reorganization." Exec. Order 13781, 82 Fed. Reg. 13,959, 13,959 (Mar. 16, 2017) (emphasis added).

### 3. Plaintiffs' challenges to the Memorandum are meritless.

**a.** The court's conclusions with respect to the Memorandum rest on the mistaken premise that OMB, OPM, and USDS have stolen statutory power from other agencies. The court reasoned that OMB, OPM, and USDS areordering agencies to engage in RIFs. Add.398-400, 402-03. Nothing supports that contention.

It is common ground that Congress empowered agencies to hire and fire their own employees. 5 U.S.C. § 3101. In exercising that authority, however, agencies properly take direction from the President. And the President may ask OMB, OPM, and his advisors in USDS to review agencies' personnel plans and provide guidance, which is all that occurred here. That sort of interagency dialogue happens every day in the federal government and is not nefarious; it is how the system is supposed to work.

Plaintiffs' reliance on the Memorandum's statement that agencies should submit Plans to OMB and OPM for "review and approval," Add.183-84,

17

misapprehends the role of OMB and OPM.  Individual agencies (not OPM and OMB) are in charge of crafting and implementing their Plans and of making decisions regarding RIFs.  The Memorandum offers broad guidelines about the information to include in the Plans—not what agencies should do.  Underscoring this, the Executive Order explains that it shall not "be construed to impair or otherwise affect … the authority granted by law to an executive department, agency, or the head thereof." Add.119, § 5(a)(i).  And the Memorandum makes clear that agencies should only undertake actions that are consistent with their statutory authority.  Add.122  Thus, the President has explained that agencies are responsible for developing and implementing RIFs.  *See also* Add.247.

Plaintiffs' allegations do not establish otherwise.  Plaintiffs do not claim, for example, that OPM is issuing RIF notices.  Instead, they point to the President's decision to set broad policy priorities, which he obviously can do, and to interagency consultation.  *E.g.*, Add.41-47.  Those actions violate no statute.  And, even assuming that the President had authorized OPM to block RIFs by withholding "approval," that delegation still would not allow OPM to affirmatively *force* agencies to conduct RIFs, as plaintiffs erroneously allege, Add.102-03  Indeed, OPM has long exercised unchallenged authority to "examine agency's preparations for [a RIF] at any stage" and to "require appropriate corrective action" if it finds a violation of the RIF regulations that OPM itself promulgates.  5 C.F.R. § 351.205.

**b.** Finally, notice-and-comment rulemaking was not required to issue the Memorandum. It is not a final agency action. *See supra* pp. 12-13. Rather, it is interagency guidance, which does not determine any legal rights or have the force and effect of law. Because it is not a legislative rule, notice-and-comment requirements do not apply. *See Gill v. DOJ*, 913 F.3d 1179, 1186 (9th Cir. 2019).

## C. The other stay factors strongly favor the government.

**1.** Every day the government is enjoined, the government and the public suffer irreparable harm. The President has determined that agencies should operate more efficiently and has directed agencies to undertake steps to optimize their workforces. The court's order prevents agencies from taking steps to implement this policy priority and determine how best to organize themselves, even though the government has "traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83. Multiple RIFs were set to be noticed within the next month, and dozens were set to occur during that period, *e.g.*, Add.346. The injunction halts those processes in their tracks with implications across the Executive Branch.

To the extent the district court's order requires agencies to retain employees they would otherwise have let go in a reduction in force, the government will never be able to recover the cost of those salaries and benefits, even if the court's order is vacated. *See Maryland v. USDA*, 2025 WL 1073657, at *1 (4th Cir. Apr. 9, 2025) (finding irreparable harm where injunction required the government to disburse funds

19

to employees, which it was "unlikely to recover"). That harm theoretically could have been addressed by a bond under Federal Rule of Civil Procedure 65(c), but the district court further abused its discretion by declining to set a bond, despite Rule 65(c)'s mandatory language. Add.408 ("wav[ing] the requirement that plaintiffs post a bond"). *But see Atomic Oil Co. of Okl. v. Bardahl Oil Co.*, 419 F.2d 1097, 1100-01 (10th Cir. 1969) ("[T]he giving of security is an absolute condition precedent to the issuance of a preliminary injunction."). Finally, the district court's exercise of jurisdiction, despite the existence of comprehensive remedial scheme, has a "disruptive effect on the administrative processes established by the government to handle cases such as these." *Garcia v. United States*, 680 F.2d 29, 32 (5th Cir. 1982).

On the other side of the ledger, plaintiffs have not established irreparable injury warranting extraordinary relief. The district court primarily found irreparable harm based on harms to employees who may be separated. But in the ordinary course, employment disputes brought by proper plaintiffs—employees—rarely justify preliminary relief because there are procedures by which a terminated employee may obtain back pay. *See, e.g., Sampson*, 415 U.S. at 92 & n.68. And, even assuming that plaintiffs established irreparable injury, any such injury is outweighed by the public interest and the Executive Branch's interest in the effective and efficient management of the federal workforce.

**2.** Any injunctive relief "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). Under settled principles of equity,

"injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994). Here, however, the district court made no effort to tailor relief to those of plaintiffs' members who can show they are likely to suffer an Article III injury absent equitable relief. At a minimum, its order should be so limited.

## II. This Court should stay the district court's discovery order.

This Court commonly grants stays pending disposition of a writ of mandamus, including in cases involving challenges to discovery orders. *See, e.g.*, *Karnoski v. Trump*, 926 F.3d 1180, 1187 (9th Cir. 2019) (per curiam). A stay is equally appropriate here.

### A. The district court failed to justify its order.

**1.** The deliberative-process privilege is a subset of executive privilege and protects deliberations by shielding from disclosure documents "reflecting advisory opinions, recommendations and comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). "[I]t would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny." *EPA v. Mink*, 410 U.S. 73, 87 (1973).

The privilege is qualified and may be overcome if a litigant's "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *FTC v. Warner Communc'ns*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam). In assessing a claim under the privilege, a court must consider "1) the

21

relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.*

Here, the court entirely failed to consider the deliberative nature of the Plans. As the government explained, "the [Plans] are deliberative agency planning documents that discuss a number of steps the agency plans to take t[o] … improve the agency's efficiency, as well as to focus on statutorily required functions activities that directly serve the public." Add.254; *see also* Add.421. Without addressing those concerns or engaging in any balancing analysis, the court simply declared that "good cause" was shown and ordered disclosure. Add.406.

That analysis is plainly inadequate. In *Karnoski*, this Court issued a writ of mandamus vacating discovery orders because the district court did not perform a sufficiently "granular" balancing analysis before holding that the plaintiffs in that case had overcome the deliberative-process privilege. 926 F.3d at 1206 ("The district court appears to have conducted a single deliberative process privilege analysis covering all withheld documents, rather than considering whether the analysis should apply differently to certain categories."); *see also id.* at 1195 (order covered 15,000 documents). Here, the error is even worse: the district court conducted no analysis at all.

### B.   Public disclosure of sensitive documents would irreparably harm the government.

**1.** Disclosure of confidential information is irreversible. Because a party is likely to suffer irreparable harm if required to disclose privileged materials, courts recognize that mandamus is appropriate to review such disclosure orders. *See, e.g.*, *In re von Bulow*, 828 F.2d 94, 98 (2d Cir. 1987) (recognizing that "appeal after judgment" is "inadequate at best" to address compelled disclosure of privileged material). The need for interlocutory review is heighted here given "[t]he unique features of the … deliberative process privilege." *Karnoski*, 926 F.3d at 1203.

Here, disclosure "would seriously undermine agency operations" across the Executive Branch. Add.421. As an OMB declarant explains, the Plans contain "highly sensitive information," which may include labor-negotiation strategies, nascent regulatory plans, and intended approaches for engaging with Congress. *Id.* Releasing such information, before agencies have reached any final decisions, would put agencies at a significant disadvantage when dealing with other stakeholders. Public disclosure might make recruitment or employee retention more difficult. *Id.* For example, a potential new hire may be unwilling to join a component if she knows that an agency had considered eliminating it, even if the agency has confirmed that it wants to keep the office open. There is a panoply of reasons for shielding pre-decisional, deliberative materials from public scrutiny—nearly all of them implicated by the Plans prepared by the 21 defendant agencies.

**2.** At minimum, this Court should require the district court to enter a protective order. Such an order, which the government has sought, Add.409-19, would at least ameliorate the harm the government would face from public disclosure, though it would do little to temper the discovery order's unwarranted intrusion into the government's privileged deliberations.

## CONCLUSION

The Court should stay the district court's order.

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

PATRICK D. ROBBINS
*Acting United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*
*maxwell.baldi@usdoj.gov*

May 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Local Rules 27-1(d) and 32-3 because it contains 5,597 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI