Nos. 25-3030, 25-3034

# In the United States Court of Appeals for the Ninth Circuit

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP,
*in his official capacity as President of the United States*, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California

In re DONALD J. TRUMP,
*in his official capacity as President of the United States*, *et al.*,

*Petitioner.*

On Petition for Writ of Mandamus to the United States District Court
for the Northern District of California

**BRIEF OF CONSTITUTIONAL ACCOUNTABILITY CENTER AS
*AMICUS CURIAE* IN OPPOSITION TO EMERGENCY MOTION FOR
STAY PENDING APPEAL/PETITION FOR WRIT OF MANDAMUS**

Elizabeth B. Wydra
Brianne J. Gorod
Miriam Becker-Cohen
Anna K. Jessurun
CONSTITUTIONAL ACCOUNTABILITY CENTER
1200 18th Street NW, Suite 501
Washington, D.C. 20036
(202) 296-6889
elizabeth@theusconstitution.org

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* states that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

INTEREST OF *AMICUS CURIAE* ........................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 1

ARGUMENT ....................................................................................... 3

 I. The Authority to Create, Restructure, and Abolish Federal Departments and Agencies Belongs to Congress ................................ 3

 II. As Historical Practice Demonstrates, When Congress Wants to Give the President Authority to Reorganize the Executive Branch, It Does So Through Legislation ............................................................ 8

CONCLUSION ..................................................................................... 12

i

# TABLE OF AUTHORITIES

<u>CASES</u>

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ........................................................... 4

*Free Ent. Fund v. PCAOB*,
   561 U.S. 477 (2010) ...................................................... 1, 3

*INS v. Chadha*,
   462 U.S. 919 (1983) ...................................................... 7, 11

*Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Serv.*,
   462 U.S. 810 (1983) ........................................................ 6

*NFIB v. OSHA*,
   595 U.S. 109 (2022) ........................................................ 4

*NLRB v. Noel Canning*,
   573 U.S. 513 (2014) ........................................................ 7

*United States v. Midwest Oil Co.*,
   236 U.S. 459 (1915) ........................................................ 7

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ...................................................... 3, 7

<u>CONSTITUTIONAL PROVISIONS</u>

U.S. Const. art. I, § 1 ......................................................... 1, 3

U.S. Const. art. I, § 8, cl. 18 ................................................. 4

U.S. Const. art. II, § 2, cl. 2 ................................................. 4

## TABLE OF AUTHORITIES – cont'd

**Page(s)**

LEGISLATIVE MATERIALS

Act of July 27, 1789, ch. 4, 1 Stat. 28 ................................................................ 4

Act of Aug. 7, 1789, ch. 7, 1 Stat. 49 ................................................................ 4

Act of Sept. 2, 1789, ch. 12, 1 Stat. 65 .............................................................. 4

Act of June 30, 1932, Pub. L. No. 72-212, 47 Stat. 382 ................................... 9

Act of Mar. 3, 1933, Pub. L. No. 72-428, tit. IV, 47 Stat. 1489 ...................... 9, 10

Act of Oct. 19, 1984, Pub. L. 98-532, 98 Stat. 2705 ....................................... 11

Act to Regulate Commerce, ch. 104, 24 Stat. 379 (1887) ............................... 5

75 Cong. Rec. (1932) ......................................................................................... 9

83 Cong. Rec. (1938) ......................................................................................... 10

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, tit. III, 124 Stat. 1520 (2010) ......................................................... 6

Henry B. Hogue, Cong. Rsch. Serv., R42852, *Presidential Reorganization Authority: History, Recent Initiatives, and Options for Congress* (2012) .............................................................................................................. 8, 10-12

Henry B. Hogue, Cong. Rsch. Serv., R47897, *Abolishing a Federal Agency: The Interstate Commerce Commission* (2024) ........................................... 6

Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 ........... 6

H.R. Rep. No. 91-1104 (1970) .......................................................................... 6

iii

# TABLE OF AUTHORITIES – cont'd

**Page(s)**

Reorganization Act of 1939, Pub. L. No. 76-19, 53 Stat. 561 .......................... 10, 11

Reorganization Act of 1945, Pub. L. No. 79-263, 59 Stat. 613 ...................... 11

Reorganization Act of 1977, Pub. L. No. 95-17, 91 Stat. 29 ........................... 11

Reorganization Act Amendments of 1984, Pub. L. No. 98-614,
   98 Stat. 3192 ................................................................................ 11

5 U.S.C. § 901 ....................................................................................... 2, 11

5 U.S.C. § 902 ....................................................................................... 2, 11

5 U.S.C. § 903 ....................................................................................... 2, 11

5 U.S.C. § 904 ....................................................................................... 2, 11

5 U.S.C. § 905 ................................................................................... 2, 11, 12

5 U.S.C. § 906 ....................................................................................... 2, 11

5 U.S.C. § 907 ....................................................................................... 2, 11

5 U.S.C. § 908 ....................................................................................... 2, 11

5 U.S.C. § 909 ....................................................................................... 2, 11

5 U.S.C. § 910 ....................................................................................... 2, 11

5 U.S.C. § 911 ....................................................................................... 2, 11

5 U.S.C. § 912 ....................................................................................... 2, 11

6 U.S.C. § 291 ........................................................................................... 6

12 U.S.C. § 5413 ....................................................................................... 7

## TABLE OF AUTHORITIES – cont'd

**Page(s)**

EXECUTIVE BRANCH MATERIALS

Exec. Order No. 13,781, 82 Fed. Reg. 13959 (Mar. 13, 2017) ....................... 2, 12

Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025) .......................... 2

Reorganization Plan No. 1 of 1953, *in* 67 Stat. 631 ......................... 8

Reorganization Plan No. 3 of 1970, *in* 84 Stat. 2086 ...................... 9

Reorganization Plan No. 3 of 1978, *in* 92 Stat. 3788 ...................... 9

BOOKS, ARTICLES, AND OTHER AUTHORITIES

Paul Stephen Dempsey, *The Rise and Fall of the Interstate Commerce
    Commission: The Tortuous Path from Regulation to Deregulation of
    America's Infrastructure*,
    95 Marq. L. Rev. 1151 (2012) ..................................................... 5, 6

Robert L. Rabin, *Federal Regulation in Historical Perspective*,
    38 Stan. L. Rev. 1189 (1986) ...................................................... 5

2 *Records of the Federal Convention of 1787* (Max Farrand ed., 1911).......... 4

v

## INTEREST OF *AMICUS CURIAE*[1]

Constitutional Accountability Center (CAC) is a think tank and public interest law firm dedicated to fulfilling the progressive promise of the Constitution's text and history. CAC works to improve understanding of the Constitution and preserve the rights, freedoms, and structural safeguards that it guarantees, and accordingly has an interest in this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Congress—not the President—"has plenary control over the … existence of executive offices." *Free Ent. Fund v. PCAOB*, 561 U.S. 477, 500 (2010). Thus, any action to create, restructure, or eliminate a federal agency must stem from an act of Congress. Though Congress may temporarily delegate this authority to the President—subject, of course, to appropriate restraints—the President lacks the power to unilaterally reorganize a government agency in the absence of such a delegation.

Congress's authority over the structure of the federal government is grounded in Article I, which vests "[a]ll legislative Powers" in Congress. U.S. Const. art. I, § 1. With these powers, Congress has created departments and agencies since the Founding. And in response to changing conditions, Congress has also reorganized and eliminated agencies to ensure that the executive branch can meet the needs of

---

[1] No person or entity other than *amicus* and its counsel assisted in or made a monetary contribution to the preparation or submission of this brief. All parties consent to the filing of this brief.

1

the American people in an efficient manner. Critically, all of these actions to re-structure the executive branch have been accomplished through legislation.

Accordingly, when Presidents have played a role in government reorganizations, they have always done so pursuant to legislative delegations of Congress's authority. Throughout the twentieth century, Congress passed statutes called Reorganization Acts. *See, e.g.*, 5 U.S.C. §§ 901-12. These Acts, which all had expiration dates, authorized the President to make substantial changes to the executive branch that could not be accomplished through ordinary discretionary actions like modifying internal operations, managing employees, and determining policy priorities. The history of the Reorganization Acts demonstrates that when Congress wants to give the President the power to reorganize the executive branch, it knows how to do so.

Congressionally authorized reorganization authority came to an end in 1984. Since then, Congress has repeatedly denied requests from Presidents across the political spectrum to renew it—including from President Trump during his first term. *See* Exec. Order No. 13,781, 82 Fed. Reg. 13959 (Mar. 13, 2017).

This time, President Trump decided that he would not take no for an answer. Rather than ask Congress for reorganization authority, he chose to unilaterally effectuate "a critical transformation of the Federal bureaucracy" by eliminating what he deemed "waste, bloat, and insularity" in the government's structure. Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025).

2

That is not how it works.  As the Supreme Court made clear half-a-century ago, "[t]he President's power, if any, to issue [an] order must stem either from an act of Congress or from the Constitution itself."  *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952).  When it comes to reorganizing the federal government, the President enjoys no constitutional authority "except for recommendation and veto," *id.* at 655 (Jackson, J., concurring)—his limited roles in the lawmaking process.  And not only has Congress declined to delegate to President Trump the reorganization power that it delegated to some prior Presidents through Reorganization Acts; it has affirmatively enacted countless statutes mandating the existence of agencies that the President now seeks to fundamentally restructure to the point of dismantlement.  Thus, Appellants' efforts to unilaterally reorganize the federal government are "incompatible with the expressed or implied will of Congress."  *Id.* at 637.  The district court was right to stop them.

## ARGUMENT

## I.  The Authority to Create, Restructure, and Abolish Federal Departments and Agencies Belongs to Congress.

**A.**  The Constitution provides that "[a]ll legislative Powers," U.S. Const. art. I, § 1, including "plenary control over the … existence of executive offices," *Free Ent. Fund*, 561 U.S. at 500, "shall be vested in a Congress of the United States," U.S. Const. art. I, § 1.  It also grants Congress the exclusive power to "carr[y] into Execution" not only the "foregoing Powers" under Article I, Section 8, but also "all

other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, § 8, cl. 18. By referencing the Vesting Clauses of Article II and Article III, this affirmative textual grant of congressional power "undoubtedly" authorizes Congress to pass laws creating executive departments, agencies, and offices. *Buckley v. Valeo*, 424 U.S. 1, 138 (1976); *see* U.S. Const. art. II, § 2, cl. 2 (granting Congress the authority to establish offices "by Law"). Agencies are thus "creatures of statute," *NFIB v. OSHA*, 595 U.S. 109, 117 (2022) (per curiam), and Congress has plenary authority over the structure of the federal government.

With that plenary authority comes substantial flexibility. Indeed, the Framers rejected a plan to delineate in the Constitution the specific departments of the executive branch and their duties, choosing instead to give Congress the power to create those departments through the legislative process. *See* 2 *Records of the Federal Convention of 1787*, at 335-36 (Max Farrand ed., 1911). The First Congress promptly exercised that power; indeed, some of the first statutes Congress passed were those establishing executive departments. *See* Act of Sept. 2, 1789, ch. 12, § 1, 1 Stat. 65, 65; Act of Aug. 7, 1789, ch. 7, § 1, 1 Stat. 49, 49-50; Act of July 27, 1789, ch. 4, § 1, 1 Stat. 28, 28-29.

Congress's power over the structure of the federal government extends beyond the establishment of departments to the creation of agencies. In 1887, Congress created the first regulatory agency: the Interstate Commerce Commission (ICC). *See* Act to Regulate Commerce, ch. 104, § 11, 24 Stat. 379, 383 (1887). Railroads were "central[] … to the national economy in the post-Civil War period," Robert L. Rabin, *Federal Regulation in Historical Perspective*, 38 Stan. L. Rev. 1189, 1197 (1986), but with this booming industry came considerable challenges, *see* Paul Stephen Dempsey, *The Rise and Fall of the Interstate Commerce Commission: The Tortuous Path from Regulation to Deregulation of America's Infrastructure*, 95 Marq. L. Rev. 1151, 1155-56, 1159 (2012). Because states were unable to address these problems themselves, a national solution was needed. *See* Rabin, *supra*, at 1206. Congress thus created the ICC, and in the years since, has repeatedly created other agencies and departments.

**B.** In the past, when Presidents have called for agencies to be abolished, they have always recognized that Congress retains the ultimate power to eliminate agencies. Consider again the ICC. Beginning in the 1970s, railroads became less profitable and "regulation … took the blame." Dempsey, *supra*, at 1172. In a series of statutes, Congress began limiting the ICC's powers, *see id.* at 1173, and Presidents Carter and Reagan appointed ICC Commissioners "fervently dedicated to deregula-

tion," *id.* at 1183.  Notably, President Reagan pushed to abolish the ICC and proposed legislation to do so, but Congress did not pass it, so the ICC remained.  Henry B. Hogue, Cong. Rsch. Serv., R47897, *Abolishing a Federal Agency: The Interstate Commerce Commission* 18 (2024).  Then, in 1995, President Clinton and Congress agreed to abolish the ICC, *see id.* at 19, and Congress eliminated the agency by enacting the ICC Termination Act.

The creation of today's Postal Service is another example of a past President recognizing that legislation is required to eliminate an agency.  In 1970, after extensive negotiations about postal system reform, "President Nixon transmitted the proposed legislation to" Congress, H.R. Rep. No. 91-1104, at 3652 (1970), and the reorganization was implemented when "Congress enacted the Postal Reorganization Act," *Nat'l Ass'n of Greeting Card Publishers v. U.S. Postal Serv.*, 462 U.S. 810, 813 (1983) (citing Pub. L. 91-375, 84 Stat. 719 (1970)).

Congress has reorganized the government by abolishing agencies through legislation more recently as well, often with the goal of increasing agency efficiency.  For instance, when Congress created the Department of Homeland Security in 2002, it abolished the Immigration and Naturalization Service.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (codified at 6 U.S.C. § 291).  And when Congress reformed federal oversight of financial institutions after the 2008 recession, it abolished the Office of Thrift Supervision.  Dodd-Frank Wall

6

Street Reform and Consumer Protection Act, Pub. L. No. 111-203, tit. III, § 313, 124 Stat. 1520, 1523 (2010) (codified at 12 U.S.C. § 5413).

**C.** This "[l]ong settled and established practice" of Congress using the law-making process to reorganize or eliminate agencies, and receiving due deference from the President, underscores that the authority to create, restructure, and abolish agencies lies with Congress as the nation's lawmaking body. *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014). That lawmaking process must "be exercised in accord with [the] single, finely wrought and exhaustively considered, procedure" of bicameralism and presentment that the Framers selected. *INS v. Chadha*, 462 U.S. 919, 951 (1983). Thus, the President can recommend that Congress create an executive agency, and he can veto a congressional effort to create one, but he has no power to create or destroy an agency on his own. *See Youngstown*, 343 U.S. at 587. The Constitution simply "does not confer upon him any power to enact laws or to suspend or repeal such as the Congress enacts." *United States v. Midwest Oil Co.*, 236 U.S. 459, 505 (1915).

## II. When Congress Wants to Give the President Authority to Reorganize the Executive Branch, It Does So Through Legislation.

From 1932 to 1984, Congress gave the President reorganization authority by passing and renewing a series of laws known as the Reorganization Acts, demonstrating that when Congress believes that delegating its reorganization power to the President will promote efficiency in government, it knows how to make such a delegation while at the same time limiting the scope of that delegation to protect against presidential overreach.

Broadly speaking, these Acts authorized the President to reorganize executive agencies, but they required that he first submit a Reorganization Plan to Congress. Henry B. Hogue, Cong. Rsch. Serv., R42852, *Presidential Reorganization Authority: History, Recent Initiatives, and Options for Congress* 1 (2012) [hereinafter Hogue, *Presidential Reorganization*]. If Congress consented to the plan (by either inaction or express approval), the plan became law. *Id.* at 1-2.

Some of today's major agencies were created by Reorganization Plans. For example, the Department of Health, Education, and Welfare—the predecessor to the Department of Health and Human Services and Department of Education—was established through a Reorganization Plan. *See* Reorganization Plan No. 1 of 1953, *in* 67 Stat. 631. The Environmental Protection Agency and the Federal Emergency

8

Management Agency were similarly created by Reorganization Plans.  *See* Reorganization Plan No. 3 of 1970, *in* 84 Stat. 2086; Reorganization Plan No. 3 of 1978, *in* 92 Stat. 3788.

Congress passed the first iteration of expressly delegated reorganization authority in 1932 at the urging of President Hoover.  In a statement to Congress, Hoover emphasized that the "gradual growth" of the executive branch had led to "overlapping and waste," and he believed that "the number of agencies can be reduced." 75 Cong. Rec. 4181 (1932).  He recommended that the "[a]uthority under proper safeguards … to effect these transfers and consolidations" should "be lodged in the President" via executive orders subject to Congress's review.  *Id.* at 4182.  Congress subsequently passed legislation to permit the President to transfer the functions of one agency to another and consolidate the functions of agencies or departments, but it did not allow the President to abolish agencies or departments.  *See* An Act of June 30, 1932, Pub. L. No. 72-212, §§ 403, 406, 47 Stat. 382, 413-15.

Hoover continued to push for the expansion of reorganization authority.  In 1933, with the Act set to expire in two years, Congress acquiesced in part, amending the Act to allow the President to abolish an executive agency, but still prohibiting the abolition of an executive department.  *See* Act of Mar. 3, 1933, Pub. L. No. 72-428, tit. IV, §§ 402, 403, 409, 47 Stat. 1489, 1517-19.  Congress explained that it

was delegating this power to the President only on a temporary basis due to the "serious emergency [that] exists by reason of the general economic depression." *Id.* § 401, 47 Stat. at 1517.

In 1937, after the authority granted in 1933 expired, Roosevelt requested renewed reorganization authority from Congress and pushed for even greater powers. Hogue, *Presidential Reorganization*, *supra*, at 10. One of the proposed bills would have allowed the President to reorganize the executive branch without any involvement from Congress and without an expiration date. *Id.* This proposal sparked sharp rebukes from members of Congress who were concerned about giving away their power. *See, e.g.*, 83 Cong. Rec. 4190 (1938) ("[L]eave final authority for changes in the Congress, where it belongs.") (Sen. Brown); *id.* at 4195 ("If the President could abolish or consolidate these agencies without authority of Congress you may rest assured he would not be here asking for authority. He cannot act [unless] we give him power which belongs to Congress.") (Sen. Borah); *id.* at 4196 ("The powers which are proposed to be given by the bill … are yet the greatest legislative powers which exist in the Congress of the United States.") (Sen. Johnson).

The next year, Congress passed the Reorganization Act of 1939, Pub. L. No. 76-19, 53 Stat. 561, a narrower version of the bills proposed the year before—indeed narrower still than the reorganization authority Congress had granted in 1933. The

Act permitted the President to reorganize agencies and departments through the submission of a Reorganization Plan (rather than executive order) to Congress, which would become law absent a concurrent resolution rejecting it. *Id.* §§ 4-5, 57 Stat. at 562-63.  This time, however, Congress prohibited the President from creating or abolishing departments or abolishing independent agencies. *See id.* § 3, 57 Stat. at 561-62.  This Act expired in 1941. *Id.* § 12, 57 Stat. at 564.

Over the ensuing decades, Congress passed additional Reorganization Acts, each with sunset dates, and at times modified the scope of their delegations.  Hogue, *Presidential Reorganization*, *supra*, at 22; *see, e.g.*, Reorganization Act of 1945, Pub. L. No. 79-263, 59 Stat. 613 (President cannot limit independence of an independent agency); Reorganization Act of 1977, Pub. L. No. 95-17, 91 Stat. 29 (President cannot create or abolish departments or abolish independent agencies).

Congressionally authorized presidential reorganization power came to an end in the 1980s.  President Reagan requested the authority in 1981, but Congress did not renew the Act until 1984. *See* Reorganization Act Amendments of 1984, Pub. L. No. 98-614, 98 Stat. 3192 (codified at 5 U.S.C. §§ 901-12).[2]  Since the 1984 Act

---

[2] In light of the Supreme Court's then-recent decision holding the legislative veto unconstitutional, *Chadha*, 462 U.S. at 959, the 1984 Act changed how reorganization plans became law by requiring a joint resolution by Congress to approve the plans, *see* 5 U.S.C. § 906(a).  Congress also passed a law to ratify all the previous reorganization plans that had become law through the previous procedure. Act of Oct. 19, 1984, Pub. L. 98-532, 98 Stat. 2705.

11

expired that year, *see* 5 U.S.C. § 905(b), the reorganization authority has not been renewed, despite requests from President George W. Bush, President Obama, and even President Trump during his first term, Hogue, *Presidential Reorganization*, *supra*, at 31-32, 34; Exec. Order No. 13,781, 82 Fed. Reg. at 13959.

## CONCLUSION

This Court should deny the stay.

Respectfully submitted,

/s/ Elizabeth B. Wydra
Elizabeth B. Wydra
Brianne J. Gorod
Miriam Becker-Cohen
Anna K. Jessurun
CONSTITUTIONAL
    ACCOUNTABILITY CENTER
1200 18th Street NW, Suite 501
Washington, D.C. 20036
(202) 296-6889
elizabeth@theusconstitution.org

*Counsel for Amicus Curiae*

Dated: May 14, 2025

12

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**    25-3030, 25-3034

I am the attorney or self-represented party.

**This brief contains** 2,596 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Elizabeth B. Wydra          **Date** May 14, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 14, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed this 14th day of May, 2025.

/s/ Elizabeth B. Wydra
Elizabeth B. Wydra

*Counsel for Amicus Curiae*