No. 25-3030

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

American Federation of Government Employees, AFL-CIO (AFGE), et al.,
*Plaintiffs-Appellees*,

v.

Donald J. Trump, in his official capacity as President of the United States, et al.,
*Defendants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
No. 3:25-cv-03698-SI
The Honorable Judge Susan Illston

_____

## PLAINTIFFS-APPELLEES' OPPOSITION TO
## EMERGENCY MOTION FOR STAY PENDING APPEAL

_____

Elena Goldstein
Skye Perryman
Tsuki Hoshijima
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel.: (202) 448-9090
egoldstein@democracyforward.org
sperryman@democracyforward.org

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Corinne F. Johnson
Alice X. Wang
Robin S. Tholin
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
dleonard@altber.com

*Attorneys for Plaintiffs-Appellees\**
*\*additional counsel and affiliations on signature pages*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND ...................................................................................2

   A.    History of Reorganization Authority ...........................................2

   B.    President Trump's Latest Attempt to Reorganize the Government ............4

   C.    Procedural History ..................................................................9

STANDARD ......................................................................................10

ARGUMENT .....................................................................................10

   I.    The TRO Is Not Appealable under 28 U.S.C. §1292(a)(1) .......................10

   II.    Even if the TRO Were Appealable, Defendants Do Not Establish Irreparable Injury ..................................................................12

   III.    Even if it Were Appealable, the TRO Is Unlikely to Be Reversed...........13

      A. The District Court correctly found that Defendants acted unlawfully ......................................................................13

        1. The EO exceeds the President's constitutional and statutory authority ..................................................................13

        2. OMB, OPM, and DOGE exceeded their authority......................17

        3. OMB's and OPM's actions violate the APA................................18

      B. Federal courts have subject matter jurisdiction to hear Plaintiffs' constitutional and APA claims..........................................20

C. The District Court correctly found Plaintiffs faced irreparable injury .................................................................................24

D. The District Court did not err in the scope of relief ordered ...............26

E. The District Court properly denied a bond .........................................27

IV.    Equitable Factors Weigh Against a Stay ....................................................27

CONCLUSION ................................................................................................28

CERTIFICATE OF COMPLIANCE ........................................................................35

FILER'S ATTESTATION ......................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*
    585 U.S. 579 (2018) ......................................................................11

*AFGE v. OPM*
    2025 WL 900057 (N.D. Cal. Mar. 24, 2025) ..................................23

*AFGE v. OPM*
    2025 WL 914823 (9th Cir. Mar. 26, 2025) ......................................22

*Al Otro Lado v. Wolf*
    952 F.3d 999 (9th Cir. 2020) .....................................................12, 13

*Alexander v. Sandoval*
    532 U.S. 275 (2001) .......................................................................22

*Appalachian Power Co. v. EPA*
    208 F.3d 1015 (D.C. Cir. 2000) ..................................................8, 18

*Axon Enters., Inc. v. FTC*
    598 U.S. 175 (2023) ...................................................21, 22, 23, 24

*Biden v. Texas*
    597 U.S. 785 (2022) .......................................................................19

*Bowsher v. Synar*
    478 U.S. 714 (1986) .......................................................................13

*Bresgal v. Brock*
    843 F.2d 1163 (9th Cir. 1987) ......................................................26

*California v. Azar*
    911 F.3d 558 (9th Cir. 2018) ...................................................25, 26

*Carson v. Am. Brands, Inc.*
    450 U.S. 79 (1981) .........................................................................11

*Chen v. INS*
    95 F.3d 801 (9th Cir. 1996) ..........................................................14

*Chrysler Corp. v. Brown*
441 U.S. 281 (1979) ..................................................................15

*City & Cnty. of San Francisco v. Trump*
897 F.3d 1225 (9th Cir. 2018) ...........................................*passim*

*Dep't of Commerce v. New York*
588 U.S. 752 (2019) ............................................................21, 22

*Dep't of Educ. v. Cal.*
145 S. Ct. 966 (2025) ................................................................11

*Doe #1 v. Trump*
957 F.3d 1050 (9th Cir. 2020) .................................................12

*Duenas v. Garland*
78 F.4th 1069 (9th Cir. 2023) .................................................15

*Duncan v. Bonta*
133 F.4th 852 (9th Cir. 2025) .................................................12

*E. Bay Sanctuary Covenant v. Biden*
993 F.3d 640 (9th Cir. 2021) ..................................................10

*E. Bay Sanctuary Covenant v. Garland*
994 F.3d 962 (9th Cir. 2020) ..................................................27

*Earth Island Inst. v. Carlton*
626 F.3d 462 (9th Cir. 2010) ..................................................28

*EEOC v. Allstate Ins. Co.*
570 F. Supp. 1224 (S.D. Miss. 1983) .....................................17

*EEOC v. CBS, Inc.*
743 F.2d 969 (2d Cir.1984) ....................................................17

*EEOC v. Chrysler Corp.*
595 F. Supp. 344 (E.D. Mich. 1984) ......................................17

*EEOC v. Martin Indus., Inc.*
581 F. Supp. 1029 (N.D. Ala. 1984)........................................17

*EEOC v. Merrill Lynch, Pierce, Fenner & Smith*
   677 F. Supp. 918 (N.D. Ill. 1987) ........................................................17

*EEOC v. Pan Am. World Airways*
   576 F. Supp. 1530 (S.D.N.Y. 1984) ....................................................17

*Elgin v. Dep't of Treasury*
   567 U.S. 1 (2012) ..........................................................................21, 22

*Env't Def. Ctr v. Bureau of Ocean Energy Mgmt.*
   36 F.4th 850 (9th Cir. 2022) ..............................................................19

*Epic Sys. Corp. v. Lewis*
   584 U.S. 497 (2018) ..........................................................................23

*Feds for Med. Freedom v. Biden*
   63 F.4th 366 (5th Cir. 2023) ..............................................................23

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*
   82 F.4th 664 (9th Cir. 2023) ..............................................................11

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*
   512 F.3d 1112 (9th Cir. 2008) ............................................................25

*Harris v. Bd. of Supervisors*
   366 F.3d 754 (9th Cir. 2004) ..............................................................25

*Johnson v. Couturier*
   572 F.3d 1067 (9th Cir. 2009) ............................................................27

*Jorgensen v. Cassiday*
   320 F.3d 906 (9th Cir. 2003) ..............................................................27

*Kerr v. Jewell*
   836 F.3d 1048 (9th Cir. 2016) ............................................................21

*Kingdomware Techs., Inc. v. U.S.*
   579 U.S. 162 (2016) ............................................................................5

*League of Women Voters v. Newby*
   838 F.3d 1 (D.C. Cir. 2016) ................................................................28

*Loper Bright Enters. v. Raimondo*
603 U.S. 369 (2024)............................................................21, 22, 24

*Lopez v. Heckler*
713 F.2d 1432 (9th Cir. 1983) ...........................................28

*Maryland v. USDA*
2025 WL 1073657 (4th Cir. Apr. 9, 2025) ........................12

*Mi Familia Vota v. Fontes*
111 F.4th 976 (9th Cir. 2024) ...........................................10

*Mims v. Arrow Fin. Servs., LLC*
565 U.S. 368 (2012)...........................................................20

*Nat'l Fed'n of Indep. Bus. v. Sebelius*
567 U.S. 519 (2012)...........................................................17

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*
422 F.3d 782 (9th Cir. 2005) .............................................10

*Navajo Nation v. Dep't of Interior*
819 F.3d 1084 (9th Cir. 2016) ...........................................19

*New York v. Trump*
133 F.4th 51 (1st Cir. 2025)...........................................16, 19

*Nken v. Holder*
556 U.S. 418 (2009).......................................................10, 12

*Norton v. S. Utah Wilderness All.*
542 U.S. 55 (2004).............................................................20

*NTEU and Dep't of Treasury, IRS*
60 F.L.R.A. 783 (2005)......................................................22

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*
128 F.4th 1089 (9th Cir. 2025) ..........................................19

*Regents of Univ. of Cal. v. Dep't Homeland Sec'y*
908 F.3d 476 (9th Cir. 2018) .............................................27

*Russell v. U.S. Dep't of the Army*
   191 F.3d 1016 (9th Cir. 1999) ...........................................................21

*Sampson v. Murray*
   415 U.S. 61 (1974)...........................................................10, 11, 13

*Saul v. United States*
   928 F.2d 829 (9th Cir. 1991) ...........................................................21

*Save Our Sonoran, Inc. v. Flowers*
   408 F.3d 1113 (9th Cir. 2005) ...........................................................27

*Seila Law LLC v. CFPB*
   591 U.S. 197 (2020)...........................................................15

*State v. Su*
   121 F.4th 1 (9th Cir. 2024) ...........................................................14

*Thunder Basin Coal Co. v. Reich*
   510 U.S. 200 (1994)...........................................................22, 24

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*
   578 U.S. 590 (2016)...........................................................23

*United States v. Fausto*
   484 U.S. 439 (1988)...........................................................21, 22

*United States v. Oakland Cannabis Buyers' Coop.*
   532 U.S. 483 (2001)...........................................................27

*Veit v. Heckler*
   746 F.2d 508 (9th Cir. 1984) ...........................................................21

*Washington v. Trump*
   2025 WL 553485 (9th Cir. Feb. 19, 2025) .......................................................28

*Washington v. Trump*
   847 F.3d 1151 (9th Cir. 2017) ...........................................................10, 11

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*
   586 U.S. 9 (2018)...........................................................23

*Youngstown Sheet & Tube Co. v. Sawyer*
    343 U.S. 579 (1952)................................................................13

**Statutes**

5 U.S.C.
    § 301................................................................................15
    § 706................................................................................18
    § 901..................................................................................4
    §§ 901-912............................................................................2
    § 903............................................................................4, 14
    § 905..................................................................................3
    § 1103..............................................................................23
    § 1105..............................................................................23
    § 3502..............................................................................15
    § 7117..............................................................................22
    § 7134..............................................................................23
    § 7701..............................................................................22

7 U.S.C.
    § 5921................................................................................8

15 U.S.C.
    § 8962................................................................................8

28 U.S.C.
    § 1292..............................................................................10
    § 1331..............................................................................20

**Federal Regulations**

5 C.F.R. § 351.201 ......................................................................19

**Executive Orders**

Exec. Order No. 13781, 82 Fed. Reg. 13959 (Mar. 13, 2017) ...................4

Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025)............*passim*

Exec. Order No. 14217, 90 Fed. Reg. 10577 (Feb. 19, 2025) ..................1

Exec. Order No. 14219, 90 Fed. Reg. 10583 (Feb. 19, 2025) ..................1

**INTRODUCTION**

Plaintiffs-Appellees—a coalition of veterans, small business, and conservation organizations, labor unions representing federal and non-federal public and private employees, and cities and counties from across the country (hereinafter "Plaintiffs")—oppose the motion for emergency stay pending appeal by Defendants-Appellants Donald J. Trump et al. (hereinafter "Defendants").

Early in his second term, President Donald J. Trump launched an unprecedented campaign to radically reorganize, and thereby dismantle, the federal government, calling this "large scale structural reform" the "Manhattan Project of our time."[1]  Central to this plan, the President issued Executive Order 14210 ("EO"), which directs the restructuring of every agency across the government, elimination of programs and functions, and drastic reduction of the number of employees within every agency.  The EO's plain language imposes mandates on every federal agency to act according to the President's terms.

---

[1] Statement by President-elect Donald J. Trump announcing Department of Government Efficiency, The American Presidency Project (Nov. 12, 2024), available at: https://www.presidency.ucsb.edu/documents/statement-president-elect-donald-j-trump-announcing-that-elon-musk-and-vivek-ramaswamy.  The President has frequently repeated this goal, *e.g*.:

- "It is the policy of my Administration … to commence the deconstruction of the overbearing and burdensome administrative state."  Exec. Order No. 14219, 90 Fed. Reg. 10583 (Feb. 19, 2025) (Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative);

- "It is the policy of my Administration to dramatically reduce the size of the Federal Government, while increasing its accountability to the American people."  Exec. Order No. 14217, 90 Fed. Reg. 10577 (Feb. 19, 2025) (Commencing the Reduction of the Federal Bureaucracy).

As the District Court found, Congress—not the President—creates, gives authority to, and appropriates funding to federal agencies. For a century, Presidents undertaking reorganization projects have uniformly sought congressional authorization. Never in the country's history has a President attempted to reorganize the government without congressional authorization, including through large-scale RIFs. But President Trump has not obtained renewal of the reorganization authority (still codified at 5 U.S.C. §§901-912) that last expired in 1984.

Faced with this unprecedented presidential assertion of reorganization authority, and its conclusions that the EO and its implementation were likely unlawful in numerous respects, the District Court properly placed a temporary, two-week pause on implementation. The TRO did not require the government to unwind implementation, and will remain in place only until May 23, four days from now. This TRO is not appealable; Defendants demonstrate no irreparable injury from the brief pause; and their request that the Court step in prematurely and issue a stay should be rejected.[2]

## BACKGROUND
### A.   History of Reorganization Authority

The District Court accurately recounted the history of presidential reorganizations (Add.394-96): for 100 years, every President who sought to

---

[2] The same day Defendants filed this stay motion, they filed a mandamus petition challenging the District Court's expedited discovery order, 9th Cir. Case No. 25-3034. Although Defendants filed the identical stay motion in both cases, Plaintiffs file separate responses in this case and No. 25-3034.

reorganize between *and* within federal agencies has obtained congressional authorization. S. REP. 115-381 (2018); *see also* Hogue, Cong. Rsch. Serv., R44909, *Executive Branch Reorganization* at 6 (Aug. 3, 2017); Larkin & Seibler, *The President's Reorganization Authority*, Heritage Foundation Legal Memorandum No. 210 at 1-3 (July 12, 2017). Presidents have employed such statutory authority for reorganizations ranging from "relatively minor reorganizations within individual agencies" to "the creation of large new organizations." Cong. Rsch. Serv., R44909, at 6. Congress has also at times rejected various presidential reorganization plans, including proposals to eliminate, merge, and consolidate agencies. *See*, *e.g.*, H.R. 714, 98th Cong. (1983); H.R. 1510, 115th Cong. (2017); S. 1116, 112th Cong. (2011); H.R. 609, 114th Cong. (2015).[3]

The most recent Reorganization Act authority expired on December 31, 1984. Pub. L. No. 98-614, 98 Stat. 3192; *see* 5 U.S.C. §905(b). President Trump unsuccessfully sought congressional reorganization authority during his first term.

---

[3] Congress has also denied some requests for reorganization authority, as with Presidents Reagan in 1981, Bush in 2003, and Obama in 2012. *See* Cong. Rsch. Serv., R42852, at 29, 32-34; S. 2129, 112th Cong. (2012); H.R. 4409, 112th Cong. (2012). Other times, Congress has reorganized agencies through regular legislation. *See*, *e.g.*, Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135. Congress has also sometimes delegated to the President limited authority to reorganize specific agencies, typically with expiration dates for the authority. *E.g.*, Pub. L. 105-277, div. G, subdiv. A, §§1601, 6601(e), 112 Stat. 2681-795 (1998) (authorizing USAID reorganization).

Add.395; *see* Exec. Order No. 13781, 82 Fed. Reg. 13959 (2017);[4] H.R. 6787, 115th Cong. (2017-2018); S. 3137, 115th Cong. (2018) (bill to reauthorize authority, never enacted).  Congress also convened numerous hearings through the regular legislative process on President Trump's specific reorganization proposals, which were largely not enacted.[5]

The reorganization authority that expired in 1984 is instructive:  Congress authorized the President to seek reorganization only for congressionally-determined purposes, and defined "reorganization" to include changes to the structure of federal agencies both *between* and *within* agencies, including consolidation or elimination of *non*-statutory and discretionary functions.  5 U.S.C. §§901, 903(a).  Congress further required the President to explain, in detail, how any changes would comport with the agencies' statutory requirements and funding levels, to facilitate Congress's consideration of the President's proposals.  *Id*. §903(b).

## B.  President Trump's Latest Attempt to Reorganize the Government

Notwithstanding the absence of congressional authorization, on February 11, 2025, President Trump issued Executive Order No. 14210 requiring all federal

---

[4] *See* OMB, *Delivering Government Solutions in the 21st Century* (June 2018) at 4 (conceding "significant changes will require legislative action"), available at https://www.whitehouse.gov/wp-content/uploads/2018/06/Government-Reform-and-Reorg-Plan.pdf.

[5] ECF 1 ¶135 (listing hearings); Cong. Rsch. Serv., *Trump Administration Reform and Reorganization Plan: Discussion of 35 "Government-Wide" Proposals*, at 1 (July 25, 2018).  Hereinafter, "ECF" refers to the District Court docket.

agencies to "*commence*[] a critical *transformation* of the Federal bureaucracy." Add.117 §1 (emphasis added). As the District Court held, "the mandatory language in the Executive Order … provid[es] specific direction to the agencies." Add.398.

The EO directs all federal agencies to "eliminat[e] waste, bloat, and insularity" and that they "*shall* promptly undertake preparations to initiate *large-scale reductions-in-force (RIFs)*" to further government "reorganization" Add.117-18 §§1, 3(c), (e) (emphases added).[6] It orders that agencies "*shall*" "prioritize[]" in these RIFs "all offices that perform functions not mandated by statute or other law," including "all agency diversity, equity, and inclusion initiatives; all agency initiatives, components, or operations that *my Administration suspends or closes*; and all components and employees performing functions" not required for government shutdown-level staffing. *Id.* §3(c) (emphases added). The District Court explained: "In other words, the President will suspend or close agency operations, and that agency must then be prioritized for a RIF, which is what appears on the present record to be happening." Add.398. The EO also directs agencies to identify "whether the agency or any of its subcomponents should be eliminated or consolidated." Add.118 §3(e). It permits (using "may") Agency Heads to exempt only certain security positions and authorizes OPM (not agencies) to grant exemptions that "promot[e] workforce reduction." Add.118 §4(b), (c).

---

[6] "It is generally clear that 'shall' imposes a mandatory duty." *Kingdomware Techs., Inc. v. U.S.*, 579 U.S. 162, 172 (2016).

To implement the EO, the President enlisted OMB and OPM, and thereby *removed* decision-making power from the impacted agencies. On February 26, 2025, OMB/OPM issued a Memorandum that "instruct[ed]" each federal agency to submit a combined "Agency RIF and Reorganization Plan" ("ARRP") implementing the EO to OMB/OPM for "review and approval." Add.121, 123-24.

The Memorandum makes clear that RIFs are the *centerpiece* of the reorganization and that agencies are required to follow the EO's direction to engage in large-scale RIFs: "Each agency *will* submit a Phase 1 ARRP to OMB and OPM for review and approval …. Phase 1 ARRPs [due March 13] *shall focus on initial agency cuts and reductions*." Add.123 (emphases added).[7] Phase 2 plans, due April 14, focus on reorganizing agencies around what remains after these RIFs, including a revised "organizational chart," "proposed relocations of agency bureaus and offices," "competitive areas for subsequent large-scale RIFs," "[a]ny components absorbing functions," and "programs and agency components not impacted by the ARRP, and the justification for any exclusion." Add.124-25. The Memorandum nowhere states that agencies retain decision-making authority. Defendants did not dispute Plaintiffs' showing that OMB and OPM have *rejected* certain agencies' ARRPs for failure to eliminate enough positions. Add.159, 397-98.

---

[7] The Memo includes a "Sample RIF Timeline" requiring agencies to identify and submit areas to RIF and submit requests for notice waivers to OPM by March 13, "[d]raft RIF notices" within 30 days, and "[i]ssue RIF notices" within 60 days (shortened to 30 with an OPM waiver). Add.127.

The District Court found that implementation of the EO via ARRPs, including large-scale RIFs and reorganizations, is ongoing or imminent across the federal government. Add.368-69, 374-75. Nonetheless, the court found, the Administration has refused to reveal the ARRPs to employees, their unions, the public, or Congress, Add.374 (or now, to the federal courts, *see* 9th Cir. Case No. 25-3034).

Notwithstanding this secrecy, Plaintiffs assembled a substantial record of actions implementing the EO through RIFs and reorganizations between and within agencies, including, as the District Court found, substantial cuts to statutorily mandated programs. Add.368-70. For example, the Department of Health and Human Services ("HHS") announced a "transformation" and "restructuring" that "is proceeding in accordance with President Trump's Executive Order," including a "reduction in workforce of about 10,000 full-time employees" (with more to come), across important subagencies including the Centers for Disease Control and Prevention ("CDC"), Food and Drug Administration, and National Institutes of Health).[8] Among other functions, these cuts terminated the *entire* CDC office that monitors lead exposure in children.[9]

---

[8] Add.151 (HHS Fact Sheet: HHS's transformation to make America healthy again (Mar. 27, 2025), HHS Press Release, HHS announces transformation to make America healthy again (Mar. 27, 2025)).

[9] CBS News, *RFK Jr. says 20% of health agency layoffs could be mistakes* (April 3, 2025), available at: https://www.cbsnews.com/amp/news/rfk-jr-hhs-job-cuts-doge-mistakes/.

Other Departments and agencies are similarly implementing the EO. *See* Add.368-71, 374-75. The Small Business Administration ("SBA") announced that "pursuant to EO 14210," it "will reduce its workforce by 43%."[10] Add.375. The Department of Veterans Affairs ("VA") revealed plans to implement the EO by returning to 2019 staffing levels and cutting 80,000 jobs.[11] Add.375, 398; *see also*, *e.g.*, ECF 70-2 Exs. A-C (Labor Department documents stating abolition of entire program office based on presidential order, and RIF therefore "due to the impact of the [EO]," specifically §3(c)).[12]

Agencies across the government are eliminating functions (Add.368-69);[13] the President is asserting that his Executive Orders abolishing offices somehow eliminate their "statutory and regulatory foundation" (Add.398);[14] and the

---

[10] SBA, *Small Business Administration announces agency-wide reorganization* (Mar. 21, 2025), available at https://www.sba.gov/article/2025/03/21/small-business-administration-announces-agency-wide-reorganization.

[11] The Hill, *VA secretary: Cutting 80,000 jobs 'is our target'* (Mar. 10, 2025), available at https://thehill.com/homenews/state-watch/5186097-va-seek-cuts-80000-jobs/. Secretary Collins confirmed this goal came from the President and OPM. *Id.*

[12] *See also* Add.161 (*AmeriCorps*: nearly all staff RIF'd per EO); ECF 70-1 Exs. C-D (*EPA*: scientific research office cut per EO); ECF 37-14 at ¶¶9-12, Exs. A-D (*GSA*: RIFs and offices cut "[i]n support of the [EO]"); ECF 41-1 at ¶15, Ex. C (*HUD*: large-scale RIFs in "[c]ompliance with [EO]"); Add.171 (*NSF*: cutting half of staff under "orders from the White House"); Add.172-73 (*SSA*: plans per EO include "abolishment of organizations and positions" and RIFs); Add.173-74 (*State*: consolidation, 15% reduction per EO); Add.174 (*Treasury*: 40% IRS cut per EO).

[13] *See, e.g.*, Add.151-52 (HHS); Add.161 (AmeriCorps); ECF 70-1 ¶¶6-7 (EPA Office of Research and Development, *see* 7 U.S.C. §5921(f); 15 U.S.C. §8962).

[14] *E.g.*, ECF 70-2 ¶¶4, 7, Exs. C, D.

reorganization is transferring functions and offices *between* agencies.[15] Agriculture Secretary Rollins recently commented that the plan is to "right-size the federal government, across every single agency." Add.294.

The District Court rejected the Government's interpretation that the President, OMB, and OPM were merely providing "guidance about how agencies should conduct RIFs," finding that record evidence "paints a very different picture: that the agencies are acting at the direction of the President and his team." Add.397.

As detailed *infra*, these actions have caused substantial injury to Plaintiffs, their members, and the public.

## C. Procedural History

Plaintiffs filed a complaint on April 28 and TRO motion May 1. Add.1, 128. Defendants submitted no evidence. They cited a single media report quoting President Trump saying federal agencies can decide whether to RIF, Add.247, 270, 276, while omitting the rest of his comment: "if they don't cut, then Elon will do the cutting." ECF 70-1 at 75.

After a May 9 hearing, the District Court issued a 14-day TRO and scheduled a May 22 preliminary injunction hearing. Add.367-408. This stay motion followed.

---

[15] *See, e.g.*, ECF 70-1 ¶¶3-4 & Ex. A (Agriculture plans may include consolidating functions with seven other agencies); ECF 37-26 ¶¶42-43 (Education student aid office will move to SBA).

## STANDARD

A stay pending appeal is an "extraordinary request." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 (9th Cir. 2021). It "is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). Irreparable injury and likely success on appeal "'are the most critical' factors." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (quoting *Nken*, 556 U.S. at 433-34). The Court also considers whether a stay will injure other parties, and the public interest. *Id.* at 434. A stay applicant bears the burden of proof, and any factual findings are subject to "very deferential" clear error review. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv*., 422 F.3d 782, 794 (9th Cir. 2005).

## ARGUMENT

### I. The TRO Is Not Appealable under 28 U.S.C. §1292(a)(1)

While a TRO with the same "practical effect" as a preliminary injunction is sometimes appealable, Mot. 8, this one is not. This TRO adheres to Federal Rule 65(b)'s 14-day limit. *See Washington v. Trump*, 847 F.3d 1151, 1158 (9th Cir. 2017) (exception to TRO non-appealability "ordinarily require[s]" that TRO exceeds this "fourteen-day period"); *Sampson v. Murray*, 415 U.S. 61, 86 n.58 (1974) ("most important" TRO constraint is time limitation); *E. Bay Sanctuary Covenant*, 932 F.3d at 762 ("key distinction" between "'true' TRO and an appealable preliminary injunction" is TRO "remains in effect for only 14 days" absent good-cause extension). Because of its limited duration, in fact, Defendants'

-10-

TRO appeal will likely be mooted by the outcome of this week's preliminary injunction hearing.

Moreover, the TRO's "practical effect" is merely to freeze the current situation in place, by enjoining further implementation of the unlawful EO for 14 days. Add.368. This TRO does not have "serious, perhaps irreparable consequence[s]" that can be "effectually challenged only by immediate appeal," *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (quotations omitted), or "drastic consequences which cannot later be corrected," *Sampson*, 415 U.S. at 86 n.58. The TRO requires no disbursement of funds, reinstatement of terminated employees, or acts that could be characterized as mandatory relief. *Cf. Dep't of Educ. v. Cal.*, 145 S. Ct. 966, 968 (2025); *Abbott v. Perez*, 585 U.S. 579, 594-95 (2018) (order barred redistricting plans' use in upcoming election). Rather, the TRO's limited relief "preserv[es] the status quo … until the court [can decide] a preliminary injunction," Mot. 9 (quotations omitted), by pausing the EO's implementation pending a preliminary injunction hearing. *Cf. Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684-85 (9th Cir. 2023) (en banc) (status quo is "legally relevant relationship between the parties before the controversy arose").[16]

---

[16] A TRO's appealability does not depend on the number of pages in the court's written decision or amount of evidence submitted. *See Washington*, 847 F.3d at 1159 (standard for entering TRO and preliminary injunction is same); *cf.* Mot. 9.

## II.     Even if the TRO Were Appealable, Defendants Do Not Establish Irreparable Injury

A stay applicant "*must* show that a stay is necessary to avoid likely irreparable injury to the applicant while the appeal is pending." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (emphasis added) (citing *Nken*, 556 U.S. at 434). Without this threshold showing, "a stay may not issue," regardless of the other stay factors. *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020). And "[t]he government cannot meet this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record." *Id.* at 1059-60.

But that is precisely what Defendants submit here (Mot. 19-20), asserting (without evidence) that the TRO halts "dozens" of planned RIFs, for which they do not identify agency, scope, *or* timing of RIF notices or termination dates, purportedly costing the government unspecified amounts—although Congress has already appropriated these funds. *See* Add.407 (noting Defendants submitted no evidence of RIF plans or amounts TRO would cost Defendants); *Duncan v. Bonta*, 133 F.4th 852, 861 n.1 (9th Cir. 2025) (appellate courts generally "will not consider facts outside the record" below ).[17] Unlike in *Maryland v. USDA*, 2025 WL 1073657, *1 (4th Cir. Apr. 9, 2025), this TRO does not require reinstatement. Moreover, "[m]ere injuries, however substantial, in terms of money, time and

---

[17] Halting RIF notices does not cost Defendants additional money within the 14-day window because RIFs are not immediate terminations. *See* Add.127 (RIFs noticed at least 30 days pre-separation). The TRO also halts placing employees on paid administrative leave, *see* Add.304, 374, which does not impact cost, ECF 37-14 at 18, Ex C.

energy necessarily expended … are not enough" to support a stay pending appeal. *Al Otro Lado*, 952 F.3d at 1008 (quoting *Sampson*, 415 U.S. at 90).

## III.    Even if it Were Appealable, the TRO Is Unlikely to Be Reversed

### A.    The District Court correctly found that Defendants acted unlawfully

#### 1.    The EO exceeds the President's constitutional and statutory authority

The Constitution is predicated on the idea that Executive power is not unlimited:  "The President's power, if any, to issue [an] order must stem either from an act of Congress or from the Constitution itself."  *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952).[18]  Where, as here, Congress has declined to reauthorize reorganization authority, his power is "at its lowest ebb."  *Id.* at 637 (Jackson, J., concurring); *accord City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1234 (9th Cir. 2018); Add.393-95.

There is no real dispute that the President lacks the authority to reorganize the federal government without congressional authorization.  *E.g.*, Larkin & Seibler, *supra* at 3 ("[T]he President does not have constitutional authority to reorganize the executive branch on his own.").[19]  Nor can there be any real dispute

_____

[18] "There can be no liberty where the legislative and executive powers are united in the same person."  *Bowsher v. Synar*, 478 U.S. 714, 721-22 (1986) (quoting James Madison in The Federalist No. 47, p. 325 (J. Cooke ed. 1961)).

[19] *Accord* York & Greszler, *A Model for Executive Reorganization*, Heritage Foundation Legal Memorandum No. 4782, at 1-2 (Nov. 3, 2017) ("Sweeping reorganization of the federal bureaucracy requires the active participation of Congress.").

-13-

that this EO proposes to reorganize the federal government—imposing a radical transformation of *all* federal agencies by eliminating programs and functions, transferring functions between agencies, and ordering agencies to restructure themselves through large-scale RIFs. *Supra* at 4-5; Add.118. The actions the EO requires fall squarely within 5 U.S.C. §903— the reorganization authority that expired in 1984. *Supra* at 3-4; Add.397.

Defendants conceded that no specific statute or constitutional provision authorizes the President's mandate to agencies to reorganize and RIF across the government. Mot. 14-17. The District Court therefore correctly held Plaintiffs likely to succeed in claiming that the EO is unconstitutional and ultra vires. Add.400; *see Chen v. INS*, 95 F.3d 801, 805 (9th Cir. 1996) ("[T]he Executive Order lacked the force and effect of law because it was never grounded in a statutory mandate or congressional delegation of authority."); *State v. Su*, 121 F.4th 1, 13 (9th Cir. 2024) ("the President cannot issue an executive order instructing agencies to carry out [his] mandate" without constitutional or statutory authority); *San Francisco*, 897 F.3d at 1235 (enjoining implementation of unconstitutional Executive Order).

This conclusion does not upend the Constitution. *Cf.* Mot. 5, 14-17. Rather, as the District Court held, it reestablishes the proper balance of authority between the democratically elected Congress and the executive branch. Add.367, 408.

Defendants rely here, as below, solely on the President's general authority to supervise federal agencies as part of his Article II duty to take care that Congress's

laws are faithfully executed. Mot. 14.[20] But no statute authorizes federal agencies to reorganize across the government (including eliminating programs and functions simply on the President's ipse dixit), or to engage in large-scale RIFs to effectuate the President's reorganization. *Cf. San Francisco*, 897 F.3d at 1240 (rejecting "Administration's interpretation [that] simply lead[s] us into an intellectual cul-de-sac"). Nor does any statute delegating authority to an agency (for example, the statute addressing RIFs, 5 U.S.C. §3502, or internal organization, 5 U.S.C. §301), give the President the power to reorganize the government.[21]

Both the EO and Memorandum go far beyond asking agencies to exercise their own statutory authority. The President and his agents have imposed and are enforcing *categorical* requirements that include a (1) government-wide mandate to commence "large-scale" RIFs; (2) transfer of agency decision-making power to OMB, OPM, and DOGE; (3) requirement that agencies RIF employees in programs and functions that the President eliminates; (4) mandate that agencies

---

[20] *Duenas v. Garland*, 78 F.4th 1069, 1072 (9th Cir. 2023), which Defendants cite for this supervisory power, Mot. 14, involved the President's Appointments Clause power to remove appointed officials. So did *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), on which *Duenas* relies. Neither can be stretched so far as to authorize the presidential directives at issue.

[21] Defendants misquote 5 U.S.C. §3502(d)(3), which requires notice to state and local governments under a (now superseded) workforce assistance law and nowhere refers to "mass layoffs." Mot.15. Indeed, §3502 provides only guidance for retention preference in the event of a RIF required to serve an agency's obligations to Congress; it is not the *source* of that authority. The "housekeeping" statute (§301) likewise "authoriz[es] what the APA terms 'rules of agency organization procedure or practice' as opposed to 'substantive rules.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979). Neither supports the weight of this EO's orders to agencies.

-15-

maximally RIF and eliminate *all* non-statutory mandated functions (with the President and his agents defining those requirements), regardless of agencies' prior assessment of need for those functions; and (5) direction to prioritize eliminating positions not required for government shut-down staffing levels that by definition cannot support proper agency function.[22] Add.116-127; *see New York v. Trump*, 133 F.4th 51, 68 (1st Cir. 2025) (affirming finding that "funding freezes [required by Executive Order] were categorical in nature, rather than being based on individualized assessments of their statutory authorities and relevant grant terms"). Defendants' contention that the President is not in fact ordering agencies to act (Mot. 15), defies the EO's language, the record, and factual findings below. The President cannot order agencies to *abuse* their discretion by categorically eliminating all functions those agencies thought prudent and important the day before the EO—that necessarily requires agencies to defy the authority delegated by Congress.

Finally, the District Court correctly rejected Defendants' reliance on savings clause language, because the EO necessarily commands agencies to act as the President directed, regardless of their statutory or other obligations. *San Francisco*, 897 F.3d at 1231, 1239-40; *New York*, 133 F.4th at 69-70; Add.368-70, 398. Defendants mischaracterize *San Francisco* (Mot. 13-14), which held that a

---

[22] Agencies, by law, cannot perform their congressionally-established functions during shutdowns. *See, e.g.*, Dep't of Commerce, *Plan for Orderly Shutdown Due to Lapse of Congressional Appropriations* (Sept. 27, 2023), available at: https://www.commerce.gov/sites/default/files/2023-09/DOC-Lapse-Plan-2023.pdf.

savings clause "does not and cannot override [the] meaning" of an Executive Order's more specific provisions. 897 F.3d at 1240.[23]

The scope of and limits on the President's *proper* exercise of Article II authority to direct agencies in their statutory duties is a question for another day and another case, not this one. As the District Court noted, "in certain cases "[w]e have no need to fix a line … It is enough for today that wherever that line may be, this [action] is surely beyond it." Add.406 (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 585 (2012)).

## 2. **OMB, OPM, and DOGE exceeded their authority**

The District Court found that OMB and OPM assumed for themselves agencies' decision-making authority over reorganization and RIF plans, exceeding any statutory authority, and that DOGE has no statutory authority at all, including to direct agency action (including cuts to functions or positions). Add.399-400.

---

[23] History shows the risk of disruptive consequences posed by Defendants' expansive view of Article II power. In 1978, President Carter invoked congressional reorganization authorization to enact reforms including the creation of the Equal Employment Opportunity Commission (EEOC) to consolidate functions from multiple agencies. That reorganization authorized a legislative veto, which was later held unconstitutional. As a result, federal courts were subsequently inundated with "numerous challenges" to EEOC enforcement actions. *E.g., EEOC v. Merrill Lynch, Pierce, Fenner & Smith*, 677 F. Supp. 918, 920 (N.D. Ill. 1987); *EEOC v. CBS, Inc*., 743 F.2d 969 (2d Cir.1984); *accord EEOC v. Chrysler Corp*., 595 F. Supp. 344 (E.D. Mich. 1984); *EEOC v. Martin Indus., Inc*., 581 F. Supp. 1029 (N.D. Ala. 1984); *EEOC v. Pan Am. World Airways*, 576 F. Supp. 1530 (S.D.N.Y. 1984); *EEOC v. Allstate Ins. Co.*, 570 F. Supp. 1224 (S.D. Miss. 1983).

Defendants now simply reargue the facts—ignoring the clear error standard and without contrary evidence—to claim OMB/OPM merely provided "guidance." Mot. 16-18.  That disregards the District Court's finding based on the Memorandum's plain language and the record evidence.  Add. 371, 397-98.

### 3.    OMB's and OPM's actions violate the APA

Because OMB and OPM acted without statutory authority, *see supra* at 17-18, their actions also exceed statutory authority under the APA.  *See* Add.400; 5 U.S.C. §706(2)(A), (C).

The District Court correctly held, based on "[t]he record presently before the Court," that OMB/OPM's Memorandum and approvals of ARRPs are final agency actions.  Add.401.  Defendants do not dispute that holding with respect to ARRP approvals.  Mot. 12-13.  And "nowhere do defendants assert that the OMB/OPM Memorandum itself is subject to change or is in draft form."  Add.401.

Defendants instead mischaracterize the Memorandum as mere interagency "guidance," Mot. 5, 19.  But again, that characterization contradicts the Memorandum's plain, mandatory terms.  *Supra* at 6; Add.402; *see Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) (holding self-styled agency "guidance" was final action because "it requires, it orders, it dictates" actions).  As the District Court found, the record establishes that federal agencies

have been complying with the Memorandum, and OMB/OPM have rejected ARRPs that do not conform.  Add.374-75, 402.[24]

Defendants wrongly contend that the Memorandum itself must "directly affect" Plaintiffs.  Mot. 13.  "[A] federal agency's assessment, plan, or decision qualifies as final agency action even if the ultimate impact of that action [on plaintiffs] rests on some other occurrence—for instance, … a decision by another administrative agency …."  *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089, 1110 (9th Cir. 2025); *see also Env't Def. Ctr v. Bureau of Ocean Energy Mgmt*., 36 F.4th 850, 869 (9th Cir. 2022).  Agency actions are final when, as here, they bind or direct how government officials act in subsequent proceedings that impact plaintiffs.  *See New York*, 133 F.4th at 68 (OMB directive to agencies to freeze federal funds); *Biden v. Texas*, 597 U.S. 785, 807-10 (2022); *Navajo Nation v. Dep't of Interior*, 819 F.3d 1084, 1091 (9th Cir. 2016).  It was uncontroverted that the RIFs, reorganizations, and ARRPs impact Plaintiffs and their members.  Add.388-91; *infra* at 24-25.

Because Plaintiffs challenge specific and "circumscribed, discrete agency actions" by OMB and OPM, their claims are not an impermissible "programmatic attack."  *Norton v. S. Utah Wilderness All*., 542 U.S. 55, 62 (2004).[25]

---

[24] OMB and OPM's assumption of final decision-making authority about each agency's ARRP contravenes OPM's own regulations, 5 C.F.R. §351.201, under which *agencies* are the decision-makers, and is an arbitrary and capricious reversal for that reason alone.

[25] Plaintiffs do not bring an APA claim against the President, Add.98-107; Add.325:11-22, and the TRO was not based on any APA claim against DOGE, Add.402.  *Cf.* Mot. 12.

Finally, Defendants' lone argument that OMB and OPM did not "engage[] in rule-making without notice and comment required by the APA" (Add.403)—that the Memorandum is not a legislative rule because it merely provides nonbinding guidance—is wrong for reasons previously discussed.

### B. Federal courts have subject matter jurisdiction to hear Plaintiffs' constitutional and APA claims

The District Court did not err in holding that Congress has not implicitly removed subject matter jurisdiction over Plaintiffs' claims. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) ("[J]urisdiction conferred by 28 U.S.C. §1331 should hold firm against 'mere implication flowing from subsequent legislation.'").

First, neither the Supreme Court nor this Court has endorsed Defendants' sweeping argument that, because Congress created administrative agencies to handle *some* employee claims involving federal employment, *all* claims impacting federal employees are excluded from federal court.[26] To the contrary, the Supreme

---

[26] Defendants' Supreme Court cases address the employees' claims against their employing agencies raised in those cases, and do not purport to blanket the field of federal employment. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012) (holding CSRA sent "covered employees appealing covered agency actions" to administrative adjudication); *United States v. Fausto*, 484 U.S. 439, 447-49 (1988) (same). While this Court has channeled individual employee suing employing agencies, it has never channeled claims brought by non-employees or their unions; challenging a government-wide Executive Order or its implementation, or any other presidential directive or OMB or OPM action; or against any defendant besides the employing agency. *See Veit v. Heckler*, 746 F.2d 508 (9th Cir. 1984); *Saul v. United States*, 928 F.2d 829 (9th Cir. 1991) (individual employee); *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016 (9th Cir. 1999) (same).

-20-

Court recently cautioned, "a statutory review scheme [that precludes district court jurisdiction] does not necessarily extend to every claim concerning agency action." *Axon Enters., Inc. v. FTC*, 598 U.S. 175, 185 (2023); *Kerr v. Jewell*, 836 F.3d 1048, 1052-53 (9th Cir. 2016).

Plaintiffs do not "seek to evade" any applicable procedure.  Mot. 11.  Rather, Plaintiffs bring *different claims* from what those statutory schemes are designed for, by challenging ultra vires presidential and agency action and ensuing APA violations, which fall under well-established express federal jurisdiction.  Far more textual indication of congressional intent is needed before removing the "command" of APA review.  *Dep't of Commerce v. New York*, 588 U.S. 752, 771-72 (2019); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392-93 (2024) ("The text of the APA means what it says.").

1.    *Local Governments, Non-Profits, and Non-Federal Unions*. Defendants concede, as they must, that the administrative agencies they invoke— the Merit Systems Protection Board ("MSPB") and Federal Labor Relations Authority ("FLRA")—could never hear these Plaintiffs' claims (which include labor unions SEIU and AFSCME and their non-federal members).  Mot. 11-12.[27] The argument that Congress intended such plaintiffs to be sent to these agencies

---

[27] *See* 5 U.S.C. §7701 (MSPB appeals limited to "employee" or "applicant" claims challenging employer actions listed in §7512), §7703 (appeal rights similarly limited), §§7103(a)(1) & 7118 (FLRA: individual, labor organization, or agency), §7123 (FLRA: appeal rights similarly limited).  The FLRA expressly cannot hear disputes arising from "government-wide" action.  *NTEU and Dep't of Treasury, IRS*, 60 F.L.R.A. 783, 783 (2005); 5 U.S.C. §7117(a)(1).

lacks any support. *See AFGE v. OPM*, 2025 WL 914823, at *1 (9th Cir. Mar. 26, 2025) ("Nor have appellants demonstrated—under existing authority—that they are likely to establish that Congress has channeled the organizational plaintiffs' claims to administrative agencies."). Contrary to Defendants' representation (Mot. 11-12), *Fausto* does not foreclose third-party claims or claims involving government-wide action simply *because* they impact federal employment. *Supra* n.26.

Nor can implied doctrines be so divorced from statutory text (which Defendants admit is "silen[t]" regarding these Plaintiffs, Mot. 11). *E.g.*, *Loper Bright Enters.*, 603 U.S. at 391-92; *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).[28] That would contravene APA precedent requiring that exceptions to judicial review be read narrowly. *Dep't of Commerce*, 588 U.S. at 771-72; *see also U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 601-02 (2016); *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22-23 (2018). The Congress that enacted the CSRA and FSLMRS referenced the APA at least three times (5 U.S.C. §§1103, 1105, 7134), and cannot be said to have silently foreclosed the bedrock principle of APA review. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510

---

[28] *See also Axon Enters.*, 598 U.S. at 217 (Gorsuch, J., concurring) (addressing concerns with extending implied doctrine: "[r]espectfully, this Court should be done with the *Thunder Basin* project. I hope it will be soon."); *Elgin*, 567 U.S. at 24 (Alito, J., dissenting) ("When Congress creates an administrative process to handle certain types of claims, it impliedly removes *those claims* from the ordinary jurisdiction of the federal courts" but "petitioners' constitutional claims are a far cry from the type of claim that Congress intended to channel through the Board.") (emphasis added).

-22-

(2018) ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." (citation omitted)).

The District Court correctly declined to expand implied preclusion doctrine to these claims.

    2.    *Federal Sector Union Plaintiffs.* Nor did the court err in concluding the *same* claims brought by federal union Plaintiffs (which include AFGE, and SEIU and AFSCME and their federal members) are not channeled either. Add.388-91. While employees or their unions can bring *certain* claims before these agencies, they cannot bring *these* claims involving constitutional separation-of-powers issues and APA challenges to the implementation of the government-wide EO and Memorandum, for the reasons previously explained. Add.388-91; *see also Feds for Med. Freedom v. Biden*, 63 F.4th 366, 375 (5th Cir. 2023) (en banc), *judgment vac'd as moot*, 144 S.Ct. 480 (2023) (employee organizations, including federal labor union, challenges to President's federal employee vaccination mandate not channeled to MSPB or FLRA); *AFGE v. OPM*, 2025 WL 900057 (N.D. Cal. Mar. 24, 2025). Congress did not intend for these claims to be adjudicated by agencies that cannot hear them. *E.g.*, *Axon*, 598 U.S. at 195 ("agency adjudications are generally ill suited to address structural constitutional challenges"); *Free Enterprise Fund*, 561 U.S. at 490.

Defendants try to shoehorn Plaintiffs' claims into this doctrine by mischaracterizing them as challenging only specific RIFs. But the shoe does not fit. The EO, Memorandum, and ARRPs are not covered employment actions, so

-23-

the MSPB cannot hear challenges to them. And the FLRA cannot hear any claim challenging a "government-wide rule." *Supra*, n.27. Defendants' argument that these Plaintiffs should be channeled simply *because* they represent federal employees is not what Congress intended. Even under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-13 (1994), claims cannot be channeled where, as here, there can be no meaningful judicial review;[29] they are *collateral* to the relevant scheme; and the agencies lack special expertise over them. *Axon*, 598 U.S. at 190-96; *Loper Bright*, 603 U.S. at 399; *Free Enterprise Fund*, 561 U.S. at 490.

### C. The District Court correctly found Plaintiffs faced irreparable injury

The District Court found that the effect of Defendants' actions has been, and will be, widespread and devastating, based on over 60 declarations that showed extensive irreparable injury to all Plaintiffs and their members, including extensive losses of services. Add.379-83.

Defendants acknowledge that Plaintiff union members who will be terminated nationwide, at every agency, face harm. Mot. 20; Add.303 n.18, 379. Defendants superficially counter only that separated employees could obtain back pay. Mot. 20. But damages from these injuries cannot be recovered under the APA. Add.404 (citing *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)); *see also*, *e.g.*, Add.379-80 (non-federal union members face job loss); Add.404

---

[29] Moreover, as the District Court concluded, there can be no meaningful review when, after a prolonged administrative process, they "would return to an empty agency with no infrastructure to support a resumption of their work." Add.389 (citation omitted).

(terminated employees will lose health insurance) (citing *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1125 (9th Cir. 2008).

Substantial record evidence further demonstrates that services relied on by non-profit and local government Plaintiffs have and will continue to suffer. Add.381-83; *see Harris v. Bd. of Supervisors*, 366 F.3d 754, 762 (9th Cir. 2004) (it is "not speculative to anticipate that reducing the resources available will further impede the County's ability to deliver medical treatment to plaintiffs in their times of need"). Plaintiffs presented extensive evidence of threatened harms to already-stretched-thin services, as well as actual harms that have already occurred. Add.369-70, 381; Add.303-04 n.21; *e.g.* ECF 37-39 ¶¶7-8, 11 (extreme Social Security delays will threaten benefits access if already understaffed agency cuts 7,000 employees as planned); ECF 37-37 ¶¶18-21, 40-41 (cuts to local, county-based offices and staff at Agriculture agency threaten survival of small and medium-sized farms); ECF 37-44 ¶¶19-22 (harms to veterans' health care); ECF 37-38 ¶¶15-16 (same). Counties have lost access to federal employees working at the county clinics and to grant specialists, forcing reliance on stop-gap funding. Add.304 n.22. Pending Forest Service cuts will shift the wildfire response burden to counties. ECF 37-49 ¶¶2-4; ECF 37-58 ¶24; *see also* Add.304 n.23; ECF 37-19 ¶¶8, 22 (localities rely on emergency response to hazardous materials threatened by cuts to EPA). These cuts directly threaten residents' health and safety, and local governments' finances; "back pay" to separated employees cannot redress these harms.

### D. The District Court did not err in the scope of relief ordered

The District Court properly enjoined specified agencies from taking further action to implement or enforce two specific subsections of the EO and the Memorandum and ARRPs that implement the EO. Add.406. As the District Court acknowledged, an injunction must be as broad as necessary to give parties relief, Add.405 (citing *Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987)), including when "a showing of nationwide impact" is made, *California v. Azar*, 911 F.3d at 584. Plaintiffs submitted extensive evidence demonstrating actual or imminent actions causing harm to Plaintiffs and their members across the country, tied to each agency the TRO enjoins.[30] *See supra* at 7, 24-25; ECF 37-3 to ECF 37-59 (58 declarations from 23 Plaintiffs); Add.217-19 (declaration chart). The TRO is therefore well within the District Court's discretion to remedy *ultra vires* unconstitutional action. *Cf. United States v. Oakland Cannabis Buyers' Coop*., 532 U.S. 483, 496 (2001).

Moreover, the APA's directive to "hold unlawful and set aside agency action" is not limited by "geographic boundaries." *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2020). Thus, the "ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Regents of Univ. of Cal. v. Dep't Homeland Sec'y*, 908 F.3d 476, 511

---

[30] Plaintiff federal and non-federal sector unions and nonprofit organizations collectively represent millions of members across the country and are not geographically limited. Add.305 n.29 (examples of AFGE, SEIU, APHA, and ARA). Plaintiff cities and counties' injuries derive not only or even mainly from termination of federal employees employed therein. *Id.* (examples of Harris County, San Francisco, and King County).

-26-

(9th Cir. 2018), *vacated in part on other grounds*, 591 U.S. 1 (2020) (cleaned up). As in *Regents of University of California*, "the government fails to explain how the district court could have crafted a narrower injunction that would provide complete relief to the plaintiffs, including the entity plaintiffs." *Id.* at 512 (citation omitted).

### E. The District Court properly denied a bond

Defendants rely only on out-of-circuit cases. Mot. 20. Under this Court's precedent, "[d]espite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original)). It was not error to reject a bond where Defendants presented no evidence and in light of the "significant public interest underlying this action." Add.407; *see Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005).

## IV. Equitable Factors Weigh Against a Stay

The District Court appropriately rejected Defendants' balance-of-equities and public-interest arguments. Add.404-05; *see Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) ("assignment of weight to particular harms is a matter for district courts to decide"). Having submitted no evidence, Add.402 n.19; *supra* at 9, Defendants now muster only the unsupported *hypothetical* that "[t]o the extent that the district court's order requires agencies to retain employees they would otherwise have let go" in the next 14 days, the government will spend money on salaries and benefits. Mot. 19. But Defendants produce no evidence

-27-

establishing the scope or timing or fact of this harm. *See supra* at 12; *see also Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) ("preventable human suffering" outweighs "financial concerns").

"[J]ust because a district court grants preliminary relief halting a policy advanced by one of the political branches does not in and of itself an emergency make." *Washington v. Trump*, 2025 WL 553485, at *1 (9th Cir. Feb. 19, 2025) (Forrest, J. concurring). And "[t]here is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *See League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citations omitted).

## CONCLUSION

The Court should deny Defendants' motion.

DATED: May 19, 2025      Respectfully submitted,

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Corinne F. Johnson
Alice X. Wang
Robin S. Tholin
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151

By: */s/ Stacey M. Leyton*

*Attorneys for Plaintiff-Appellee Organizations*[31]

Elena Goldstein
Skye Perryman
Tsuki Hoshijima
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel.: (202) 448-9090

By: */s/ Elena Goldstein*

---

[31] Plaintiff-Appellee Organizations are the American Federation of Government Employees, AFL-CIO (AFGE); American Federation of State County and Municipal Employees, AFL-CIO; Service Employees International Union, AFL-CIO (SEIU); AFGE Local 1122; AFGE Local 1236; AFGE Local 2110; AFGE Local 3172; SEIU Local 1000; Alliance of Retired Americans; American Geophysical Union; American Public Health Association; Center for Taxpayer Rights; Coalition to Protect America's National Parks; Common Defense Civic Engagement; Main Street Alliance; Natural Resources Defense Council, Inc. (NRDC); Northeast Organic Farming Association, Inc; VoteVets Action Fund Inc.; and Western Watersheds Project.

-29-

*Attorneys for Plaintiff-Appellee Organizations (except NRDC) and for City of Chicago, IL; Martin Luther King, Jr. County, WA; Harris County, TX; and City of Baltimore, MD*

Jules Torti
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038
Erica J. Newland
Jacek Pruski
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave., N.W., Suite 163
Washington, D.C. 20006
Tel.: (202) 579-4582
jules.torti@protectdemocracy.org
erica.newland@protectdemocracy.org
jacek.pruski@protectdemocracy.org

*Attorneys for Plaintiff-Appellee Organizations (except NRDC)*

Norman L. Eisen
Spencer W. Klein
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel.: (202) 594-9958
Norman@statedemocracydefenders.org
Spencer@statedemocracydefenders.org

*Attorneys for Plaintiff-Appellee Organizations (except NRDC)*

Rushab Sanghvi
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, DC 20001
Tel.: (202) 639-6426

-30-

Sanghr@afge.org

*Attorney for Plaintiff-Appellee American Federation of Government Employees, AFL-CIO (AFGE) and AFGE locals*

Teague Paterson
Matthew Blumin
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036
Tel.: (202) 775-5900
Tpaterson@afscme.org
Mblumin@afscme.org

*Attorneys for Plaintiff-Appellee American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury
SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel.: (202) 730-7428
steven.ury@seiu.org

*Attorney for Plaintiff-Appellee Service Employees International Union, AFL-CIO (SEIU)*

David Chiu
City Attorney
Yvonne R. Meré
Chief Deputy City Attorney
Mollie M. Lee
Chief of Strategic Advocacy
Sara J. Eisenberg
Chief of Complex and Affirmative Litigation

-31-

Molly J. Alarcon
Alexander J. Holtzman
Deputy City Attorneys
OFFICE OF THE CITY ATTORNEY FOR THE
CITY AND COUNTY OF SAN FRANCISCO
1390 Market Street, 7th Floor
San Francisco, CA 94102
molly.alarcon@sfcityatty.org
alexander.holtzman@sfcityatty.org

By: */s/ David Chiu*

*Attorneys for Plaintiff-Appellee City and County of San Francisco*

Tony LoPresti
COUNTY COUNSEL
Kavita Narayan
Meredith A. Johnson
Raphael N. Rajendra
Hannah M. Godbey
OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
70 West Hedding Street, East Wing, 9th Floor
San José, CA 95110
Tel.: (408) 299-5900

By: */s/ Tony LoPresti*

*Attorneys for Plaintiff-Appellee County of Santa Clara, Calif.*

David J. Hackett
General Counsel to King County Executive &
Special Deputy Prosecutor
Alison Holcomb
Deputy General Counsel to King County
Executive & Special Deputy Prosecutor
Erin King-Clancy
Senior Deputy Prosecuting Attorney

-32-

OFFICE OF KING COUNTY PROSECUTING
ATTORNEY LEESA MANION
401 5th Avenue, Suite 800
Seattle, WA 98104
Tel.: (206) 477-9483
David.Hackett@kingcounty.gov
aholcomb@kingcounty.gov
aclancy@kingcounty.gov

*Attorneys for Plaintiff-Appellee Martin Luther
King, Jr. County (King County)*

Sharanya Mohan
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Tel.: (510) 738-6788
sai@publicrightsproject.org

*Attorney for Plaintiffs-Appellees Baltimore, MD;
Chicago, IL; Harris County, TX; and King County,
WA*

Christian D. Menefee
Harris County Attorney
Jonathan G.C. Fombonne
Deputy County Attorney and First Assistant
Tiffany Bingham
Managing Counsel
Sarah Utley
Division Director – Environmental Division
Bethany Dwyer
Deputy Division Director – Environmental
Division
R. Chan Tysor
Senior Assistant County Attorney
Alexandra "Alex" Keiser
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002

-33-

Tel.: (713) 274-5102
Fax: (713) 437-4211
jonathan.fombonne@harriscountytx.gov
tiffany.bingham@harriscountytx.gov
sarah.utley@harriscountytx.gov
bethany.dwyer@harriscountytx.gov
chan.tysor@harriscountytx.gov
alex.keiser@harriscountytx.gov

*Attorneys for Plaintiff-Appellee Harris County, Texas*

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago
Stephen J. Kane
Rebecca A. Hirsch
Lucy Prather
City of Chicago Department of Law,
Affirmative Litigation Division
121 N. LaSalle Street, Suite 600
Chicago, Illinois 60602
Tel.: (312) 744-6934
Stephen.kane@cityofchicago.org
Rebecca.Hirsch2@cityofchicago.org
Lucy.Prather@cityofchicago.org

*Attorneys for Plaintiff-Appellee City of Chicago*

Ebony M. Thompson
Baltimore City Solicitor
Sara Gross
Chief of Affirmative Litigation
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, Maryland 21202
Tel.: (410) 396-3947
sara.gross@baltimorecity.gov

*Attorneys for Plaintiff-Appellee City of Baltimore*

-34-

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it is proportionally spaced and has a typeface of 14 points. It contains 6,984 words, in compliance with the type-volume limitations of Circuit Rules 27-1(1)(d), 32-3(2), and 32-2(b), as a joint brief submitted by the separately represented parties of Plaintiff Organizations, the County of Santa Clara, and the City and County of San Francisco.

Dated: May 19, 2025                    */s/ Stacey M. Leyton*
                                        Stacey M. Leyton

## FILER'S ATTESTATION

Pursuant to Circuit Rule 25-5(f), the filer attests that all other signatories to this document concur in the content of, and have authorized, this filing.

Dated: May 19, 2025        */s/ Stacey M. Leyton*
                              Stacey M. Leyton