**Nos. 25-3030, 25-3034**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO,
*et al.*,
*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,
*Defendants-Appellants.*

(full caption on inside cover)

————————————

On Appeal from the United States District Court
for the Northern District of California

————————————

In re DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,
*Petitioner.*

(full caption on inside cover)

————————————

On Petition for Writ of Mandamus to the United States District Court
for the Northern District of California

————————————

**REPLY IN SUPPORT OF EMERGENCY MOTION
FOR STAY PENDING APPEAL/PETITION FOR WRIT OF MANDAMUS**
————————————

YAAKOV M. ROTH
*Acting Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

PATRICK D. ROBBINS
*Acting United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*

No. 25-3030

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 1000; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA, CALIFORNIA; CITY OF CHICAGO, ILLINOIS; MARTIN LUTHER KING, JR. COUNTY, WASHINGTON; HARRIS COUNTY, TEXAS; CITY OF BALTIMORE, MARYLAND; and CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, *in his official capacity as Director of U.S. Office of Management and Budget*; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, *in his official capacity as Acting Director of the U.S. Office of Personnel Management*; DEPARTMENT OF GOVERNMENT EFFICIENCY; ELON MUSK, *in his official capacity as the actual head of the Department of Government Efficiency*; AMY GLEASON, *in her official capacity as the titular Acting Administrator of the Department of Government Efficiency*; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of the U.S. Department of Commerce*; UNITED STATES DEPARTMENT OF DEFENSE; PETE HEGSETH, *in his official capacity as Secretary of the U.S. Department of Defense*; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, *in his official capacity as Secretary of the U.S. Department of Energy*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR., *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing and Urban Development*; UNITED STATES DEPARTMENT OF JUSTICE; PAM BONDI, *in her official capacity as Attorney General of the U.S. Department of Justice*; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*; UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of the U.S. Department of Labor*; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*; UNITED STATES DEPARTMENT OF TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of U.S. Department of Treasury*; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY*, in his official capacity as Secretary for the U.S. Department of Transportation*; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, *in his official capacity as Secretary of Veterans Affairs*; AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI, *in her official capacity as Interim Agency Head of AmeriCorps*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, *in his official capacity as Administrator of U.S. Environmental Protection Agency*; UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, *in his official capacity as Acting Administrator for U.S. General Services Administration*; NATIONAL LABOR RELATIONS BOARD; MARVIN KAPLAN, *in his official capacity as Chairman of the National Labor Relations Board*; WILLIAM COWEN, *in his official capacity as the Acting General Counsel of the National Labor Relations Board*; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, *in his official capacity as Acting Director of the National Science Foundation*; UNITED STATES SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, *in her official capacity as Administrator of the U.S. Small Business Administration*; UNITED STATES SOCIAL SECURITY ADMINISTRATION; and LELAND DUDEK, *in his official capacity as Acting Commissioner of the U.S. Social Security Administration*,

*Defendants-Appellants*.

## No. 25-3034

In re DONALD J. TRUMP, *in his official capacity as President of the United States, et al.*,

DONALD J. TRUMP, *in his official capacity as President of the United States*, UNITED STATES OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, *in his official capacity as Director of U.S. Office of Management and Budget*; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; CHARLES EZELL, *in his official capacity as Acting Director of the U.S. Office of Personnel Management*; DEPARTMENT OF GOVERNMENT EFFICIENCY; ELON MUSK, *in his official capacity*; AMY GLEASON, *in her official capacity as the Acting Administrator of the Department of Government Efficiency*; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, *in her official capacity as Secretary of the U.S. Department of Agriculture*; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of the U.S. Department of Commerce*; UNITED STATES DEPARTMENT OF DEFENSE; PETE HEGSETH, *in his official capacity as Secretary of the U.S. Department of Defense*; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, *in his official capacity as Secretary of the U.S. Department of Energy*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY JR., *in his official capacity as Secretary of the U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, *in his official capacity as Secretary of the U.S. Department of Housing and Urban Development*; UNITED STATES DEPARTMENT OF JUSTICE; PAM BONDI, *in her official capacity as Attorney General of the U.S. Department of Justice*; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, *in his official capacity as Secretary of the U.S. Department of the Interior*; UNITED STATES DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, *in her official capacity as Secretary of the U.S. Department of Labor*; UNITED STATES DEPARTMENT OF STATE; MARCO RUBIO, *in his official capacity as Secretary of the U.S. Department of State*; UNITED STATES DEPARTMENT OF TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of U.S. Department of Treasury*; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, *in his official capacity as Secretary for the U.S. Department of Transportation*; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, *in his official capacity as Secretary of Veterans Affairs*; AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI, *in her official capacity as Interim Agency Head of AmeriCorps*; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, *in his official capacity as Administrator of U.S. Environmental Protection Agency*; UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, *in his official capacity as Acting Administrator for U.S. General Services Administration*; NATIONAL LABOR RELATIONS BOARD; MARVIN KAPLAN, *in his official capacity as Chairman of the National Labor Relations Board*; WILLIAM COWEN, *in his official capacity as the Acting General Counsel of the National Labor Relations Board*; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, *in his official capacity as Acting Director of the National Science Foundation*; UNITED STATES SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, *in her official capacity as Administrator of the U.S. Small Business Administration*; UNITED STATES SOCIAL SECURITY ADMINISTRATION; and LELAND DUDEK, *in his official capacity as Acting Commissioner of the U.S. Social Security Administration*,
*Petitioners-Defendants*,

v.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
*Respondent*,

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO; AFGE LOCAL 1122; AFGE LOCAL 1236; AFGE LOCAL 2110; AFGE LOCAL 3172; SEIU LOCAL 1000; ALLIANCE FOR RETIRED AMERICANS; AMERICAN GEOPHYSICAL UNION; AMERICAN PUBLIC HEALTH ASSOCIATION; CENTER FOR TAXPAYER RIGHTS; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; COMMON DEFENSE CIVIC ENGAGEMENT; MAIN STREET ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL, INC.; NORTHEAST ORGANIC FARMING ASSOCIATION, INC.; VOTEVETS ACTION FUND INC.; WESTERN WATERSHEDS PROJECT; COUNTY OF SANTA CLARA, CALIFORNIA; CITY OF CHICAGO, ILLINOIS; MARTIN LUTHER KING, JR. COUNTY, WASHINGTON; HARRIS COUNTY, TEXAS; CITY OF BALTIMORE, MARYLAND; and CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA,
*Real Parties in Interest-Plaintiffs*.

## TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT............................................ 1

ARGUMENT................................................................................................ 2

I.     This Court should stay the grant of injunctive relief.............................. 2

      A.    This Court has appellate jurisdiction.............................................. 2

      B.    Plaintiffs' claims are not justiciable in district court.................... 3

      C.    Plaintiffs' challenges to the Executive Order and Memorandum fail....... 5

      D.    The other stay factors favor the government. .............................. 9

II.    This Court should stay the production order........................................ 11

CONCLUSION ......................................................................................... 12

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs do not seriously dispute that agencies have statutory authority to undertake reductions-in-force. Rather, in defending the district court's sweeping order, plaintiffs insist that no statute grants the President the authority to direct RIFs. But the President has not directed a single RIF. And even if he had, it is a basic constitutional principle that because "[t]he entire 'executive power' belongs to the President alone," he must have "the power of … overseein[g] and controlling those who execute the laws" on his behalf. *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). As the Supreme Court has recognized, "[i]t clearly is within the President's constitutional and statutory authority to prescribe the manner in which" his subordinates conduct their business, and "this mandate of office must include the authority to prescribe reorganizations and reductions in force." *Nixon v. Fitzgerald*, 457 U.S. 731, 757 (1982). Thus, the President acted well within his constitutional prerogative in telling agencies to examine their statutory authorities and take steps to implement his policy priorities, consistent with applicable law and subject to the guidance of OPM and OMB. Plaintiffs' speculation that agencies will disregard statutory restrictions in undertaking RIFs does not rehabilitate the court's facial injunction.

Plaintiffs also fail to rebut the government's showing that their claims fail at the threshold: Congress has set up a highly reticulated scheme to resolve federal employment disputes, and they lack a viable APA or *ultra vires* cause of action.

Nor can plaintiffs meaningfully dispute the harms caused by the district court's order, which has disabled a huge swath of the Executive Branch from managing the size of their workforce consistent with the President's priorities and their own internal planning. To forestall the harm caused by that order and the accompanying order to produced privileged documents, this Court should grant a stay.[1]

## ARGUMENT

### I. This Court should stay the grant of injunctive relief.

#### A. This Court has appellate jurisdiction.

Plaintiffs primarily assert that the court's order is not appealable because it is set to last, by its terms, for two weeks. *See* Appeal.Opp.10. But plaintiffs do not dispute that the court received voluminous briefing, held a hearing, and issued a 42-page opinion that provides considered views on each of the legal issues disputed by the parties. *See East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018); Add.360 (acknowledging the "quite extensive" TRO briefing and suggesting that only a "supplemental brief with any additional things that have transpired" would be necessary for purposes of a preliminary injunction). That goes far beyond the purposes of a temporary restraining order: preserving the status quo to give a court enough time to fully consider a motion for preliminary injunction. *See Pan Am. World*

---

[1] Plaintiffs filed two oversized responses to the government's single stay motion; this reply endeavors to respond to plaintiffs' arguments comprehensively within the constraints of Federal Rule of Appellate Procedure 27, and the government rests on its motion with respect to any matters not explicitly addressed.

*Airways v. Flight Engineers' Int'l Ass'n*, 306 F.2d 840, 842-43 (2d Cir. 1962); *see also Houghton v. Meyer*, 208 U.S. 149, 156 (1908). The court's order barring a wide swath of the Executive Branch from undertaking steps to implement RIFs continues to inflict irreparable harm on the government, *see infra* pp. 9-10, and the court's choice of label does not "shield its orde[r] from appellate review," *Sampson v. Murray*, 415 U.S. 61, 86-87 (1974); *see Department of Educ. v. California*, 145 S. Ct. 966, 968 (2025).

Furthermore, plaintiffs nowhere challenge that this Court may exercise its mandamus jurisdiction over the injunctive relief portion of the order, and the Court may enter a stay under 28 U.S.C. § 1651.

### B.   Plaintiffs' claims are not justiciable in district court.

**1.**  Plaintiffs fail to establish subject-matter jurisdiction. The union plaintiffs insist they are not challenging "specific RIFs," but rather the Executive Order and Memorandum directing agencies to take steps to implement RIFs. Appeal.Opp.23. But Congress would not have enacted the "elaborate framework" of the CSRA and FSLMRS for reviewing federal-employee terminations and labor disputes, *Elgin v. Department of the Treasury*, 567 U.S. 1, 11 (2012) (quotation marks omitted), while allowing an end-run around those processes in the form of a district court action preemptively challenging preparations for RIFs across the Executive Branch. That plaintiffs invoke the separation of powers (Appeal.Opp.23) does not change the basic thrust of their suit. *See id.* at 22-23 (CSRA channels review of constitutional claims); *AFGE v. Trump*, 929 F.3d 748, 759 (D.C. Cir. 2019) (district court lacked subject-

3

matter jurisdiction over unions' claims alleging Executive Order was unconstitutional and *ultra vires*).

To the extent the MSPB and FLRA cannot hear claims by the non-profits, local governments, or non-federal-union plaintiffs (Appeal.Opp.21-22) that confirms that they are not proper parties to bring those claims at all, not that they may file suit in district court outside the CSRA framework. *See United States v. Fausto*, 484 U.S. 439, 449 (1988). "[I]t is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies," that precludes jurisdiction; accordingly, even where "the CSRA provides no relief," it "precludes other avenues of relief." *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (Roberts, J.) (citation omitted); *see Block v. Community Nutrition Inst.*, 467 U.S. 340, 346-47 (1984). It would turn that comprehensive scheme "upside down" to allow third parties who are at most indirectly affected by agencies' personnel actions to challenge those actions outside of the processes and procedures that apply to federal employees' and unions' claims. *Fausto*, 484 U.S. at 449.

**2.** Plaintiffs also lack a viable APA or *ultra vires* cause of action. Plaintiffs do not dispute that the Executive Order is not subject to APA review. Appeal.Opp.19 n.25. And they fail to meaningfully engage with the Memorandum in asserting that it finally determines rights or obligations or imposes legal consequences. Appeal.Opp.19. The Memorandum sets forth a framework for preparation and review of proposed agency RIF plans and merely marks the beginning of an iterative

4

process of engagement with executive agencies. Stay.Mot.12-13. Plaintiffs assume that agencies will "eliminate *all* non-statutory mandated functions," will reduce their workforces to "shut-down staffing levels," and will "transfe[r] functions and offices *between* agencies" without congressional authorization. Appeal.Opp.9, 16. But plaintiffs' speculation about what agencies will do at the conclusion of an iterative process—based on their interpretation of factors to guide that process—does not transform the Memorandum into reviewable final agency action. Plaintiffs fare no better in asserting that any approval by OMB and OPM of the Plans are final agency action, because the individual agencies must carry out their plans and only those discrete actions have legal force and effect.

Nor do plaintiffs rebut the government's showing (Stay.Mot.13-14) that they lack a viable *ultra vires* claim where the Executive Order and Memorandum contain express language emphasizing the need to comply with applicable law. Plaintiffs refer to the Executive Order's "more specific provisions" (Appeal.Opp.17) but identify no language purporting to direct agencies to take any actions inconsistent with law.

### C. Plaintiffs' challenges to the Executive Order and Memorandum fail.

**1.** Plaintiffs (Appeal.Opp.15) and the district court (Add.397) acknowledge that agencies have statutory authority to conduct RIFs. *See* 5 U.S.C. § 3502. That authority forecloses plaintiffs' challenge to the Executive Order, which permissibly

directs agencies to "undertake preparations" for RIFs consistent with their statutory authority. Add.118.

Plaintiffs insist that § 3502 does not apply to "large scale" RIFs. Appeal.Opp.15. But nothing in the text of that provision limits the size of RIFs. Indeed, § 3502 expressly contemplates that some RIFs will affect a "significant number of employees." 5 U.S.C. § 3502(d)(1)(B). In such a case, the agency must provide advance notice to "the State or entity designated by the State to carry out rapid response activities under section 134(a)(2)(A) of the Workforce Investment Act of 1998," 5 U.S.C. § 3502(d)(1)(B), (d)(3)(A)(i), which allows States to use emergency funds respond to, inter alia, "mass layoffs," Workforce Investment Act of 1998, Pub. L. No. 105-220, § 134(a)(2)(A), 112 Stat. 936, 990.[2] A "large" RIF that comports with the agency's statutory structure and function is just as lawful as a "small" one, and plaintiffs may not impose an atextual and amorphous cap of their own devising.

That Congress has not enacted a new reorganization act (Appeal.Opp.13-14) is beside the point. Unless a "reorganization" transgresses some other statutory limitation, an agency may rely on its housekeeping authority to manage its structure. Examples of such non-statutory alterations to agency structures are legion. *See, e.g.*, 75 Fed. Reg. 70122 (Nov. 17, 2010) (establishing Office of Tribal Justice within

---

[2] The relevant provision is now codified at 29 U.S.C. § 3174(a)(2)(A). *See* Pub. L. No. 113-128, Title V, § 513(a), 128 Stat. 1425, 1722 (references to Workforce Investment Act of 1998 deemed to refer to Workforce Innovation and Opportunity Act).

Department of Justice); 71 Fed. Reg. 42234 (July 25, 2006) (eliminating and consolidating certain offices within Department of Labor). As discussed, the Executive Order does not direct any reorganization or other action that would conflict with agencies' statutory mandates. And despite suing 20 agencies, plaintiffs fail to allege any violation of any organic statute.

Plaintiffs' argument thus rests on the remarkable assertion that the Executive Order is unlawful because the President cannot direct agencies to undertake RIFs consistent with applicable law absent express statutory authority. Appeal.Opp.14-15. But the Constitution undoubtedly allows the President to give policy direction to executive agencies, *see United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021); *see generally* Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245 (2001), including with respect to RIFs, as the Supreme Court has specifically recognized, *see Fitzgerald*, 457 U.S. at 757. Far from being a residual power of minor importance (*contra* Appeal.Opp.14-15), the President's power to supervise agencies lies at the heart of his executive authority. Our constitutional structure presumes that the President is "responsible for the actions of the Executive Branch," *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 496-97 (2010) (cleaned up), and that the President's "'ongoing supervision and control' … legitimizes the power that" agencies exercise, *Duenas v. Garland*, 78 F.4th 1069, 1072 (9th Cir. 2023) (quotations omitted). Plaintiffs miss the point in attempting to cabin these Article II principles to the President's removal power. Appeal.Opp.15 n.20. The President's removal power is not separate from the

power to supervise; it *ensures* presidential control over executive agencies. *See Selia Law*, 591 U.S. at 213-14.

**2.** Plaintiffs' arguments about the Memorandum likewise fail. Plaintiffs assert (Appeal.Opp.18) that OPM and OMB acted without statutory authority in issuing the Memorandum. OPM, has express statutory authority to "prescribe regulations for the release of competing employees in a reduction in force," 5 U.S.C. § 3502(a), and other related authorities with respect to aiding the President in personnel management, *e.g.*, *id.* §§ 1301, 1302(b). Under a longstanding regulation, OPM may "establish further guidance and instructions for the planning, preparation, conduct, and review of [RIFs]," "may examine an agency's preparations for [RIFs] at any stage," and "may require appropriate corrective action" if an agency's RIF plans do not comply with OPM regulations. 5 C.F.R. § 351.205. These regulations "mandate a continuing exchange between each agency and the OPM." *NTEU v. Devine*, 733 F.2d 114, 120 (D.C. Cir. 1984). As for OMB, it has express statutory authority to "[f]acilitate actions by the Congress and the executive branch to improve the management of Federal Government operations and to remove impediments to effective administration." 31 U.S.C. § 503(b)(4); *see also* 5 C.F.R. § 1310.1 (providing OMB may "issu[e] policy guidelines to Federal agencies to promote efficiency and uniformity in Government activities"). In providing guidance and instructions to agencies as they implement the President's Executive Order, OPM and OMB acted comfortably within these authorities and the processes established by the Executive Order.

8

Plaintiffs' contrary argument is based only on their assertion that the district court made a factual "finding" (which plaintiffs insist must be reviewed for clear error) that OMB and OPM "assumed for themselves agencies' decision-making authority." Appeal.Opp.17-18. Plaintiffs' only apparent support for that proposition is the district court's recitation of the contents of the Memorandum, *id.* (citing Add.371), which is not a factual finding. And in any event, it would be clear error to conclude from the Memorandum that OPM and OMB unlawfully usurped agencies' decision-making authority. *See, e.g.*, Add.122-23 (explaining "available tools" to agencies and what agencies "should" focus on to achieve the President's policy goals while cautioning that "[a]gencies should review their statutory authority"). To the extent plaintiffs rely on the district court's statement that it is "evidence" of "unlawful action" that "agencies are acting at the direction of the President and his team" in planning and executing RIFs, Appeal.Opp.17 (citing Add.397-98), that turns Article II on its head, for the reasons explained, *see supra* p. 7.

## D.  The other stay factors favor the government.

"[T]he Government has traditionally been granted the widest latitude" in personnel matters and "the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (citation omitted). The government's interest is gravely hindered by the court's order, which bars a huge swath of the Executive Branch from acting to manage the size of its workforce—delaying and disrupting agencies' plans, imposing fiscal and administrative harms, and sowing confusion over agencies' latitude to engage in a

9

wide variety of internal planning and organizational activities. The broad sweep of the order potentially impedes even ordinary planning and human-resources functions.

Plaintiffs invoke injuries to employees who may be terminated (Appeal.Opp.24), but, in the ordinary course, federal employment disputes brought by employees rarely justify preliminary relief because affected employees may pursue relief in an appropriate forum and obtain back pay. *See Sampson*, 415 U.S. at 92 & n.68. And plaintiffs' speculation about downstream harms from agencies' plans, such as the possibility that certain facilities may be closed or federal services may be delayed (Appeal.Opp.25), does not establish imminent, irreparable injury. At a minimum, any such injury is "plainly outweigh[ed]" by the public interest and the Executive Branch interest in the effective and efficient management of the federal workforce. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008).

The order also sweeps far more broadly than is necessary or permissible. Relief must be limited to redressing the specific plaintiff's injury. *See Gill v. Whitford*, 585 U.S. 48, 66 (2018). The court acknowledged that its order would "provide relief beyond the named parties," but it claimed that "to do otherwise is impracticable and unworkable, particularly where the agencies' RIF plans largely remain secret." Add.405. But it is plaintiffs' burden to justify the scope of the injunctive relief sought and identify those parties that actually face imminent harm absent such relief; and it is up to the government to determine whether in complying with an injunction it

chooses to extend broader relief to make compliance easier.  *See Arizona v. Biden*, 40 F.4th 375, 398 (6th Cir. 2022) (Sutton, C.J., concurring).

## II.    This Court should stay the production order.

**1.**  Plaintiffs do not contest that the district court ordered the government to produce reams of internal agency documents without considering whether they were deliberative.  *See* Mandamus.Opp.10 n.4.  And while they argue that the government did not properly invoke the deliberative process privilege in opposing their motion for preliminary relief, *id.*, plaintiffs do not contest that they failed to comply with the appropriate procedures for seeking discovery, *e.g.*, N.D. Cal. R. 37-1, 37-2, or that the district court gave them more than they asked for, *see* Add.406.

Instead, plaintiffs' defense of the district court's order rests on analysis the district court never performed, Mandamus.Opp.16-20, and which this Court is not responsible for performing in the first instance.  The district court should have considered the deliberative process privilege before ordering production; failing to do so was clear error.  *See Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019) (per curiam).

In any event, the Plans fall within the deliberative process privilege.  They detail nascent agency proposals for future actions and are designed to facilitate interagency dialogue and planning.  Add.421; *see* Add.123-26.  If plaintiffs want to assert that certain portions of the Plans may be disclosed, they should do so through a proper discovery motion.  Even then, blanket disclosure is unwarranted.

**2**.  Because the production order has not been vacated, it is still properly before this Court.  *Contra* Mandamus.Opp.1.  Plaintiffs refer to the district court's stay and what the court "may" do pending further consideration, Mandamus.Opp.8, but neither the court's stay nor the possibility of reconsideration renders mandamus unavailable when the court may lift its self-imposed stay at any moment and again require irreversible disclosure.  This Court has jurisdiction to issue a writ.

## CONCLUSION

The Court should grant a stay.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

PATRICK D. ROBBINS
  *Acting United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON

  */s/ Maxwell A. Baldi*
MAXWELL A. BALDI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*
  *maxwell.baldi@usdoj.gov*

May 2025

12

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) and Local Rules 27-1(1)(d) and 32-3 because it contains 2,794 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Maxwell A. Baldi*
MAXWELL A. BALDI